### Town of Castleton v. Marcus G. Langdon.

A conveyance of land to a town, for the purpose, as expressed, of having a school house erected and a school taught thereon for the benefit of the youth of the town, for a term specified, of itself imports, in its object, a sufficient consideration to support the conveyance.

An action of trespass *quare clausum fregit*, for encroachments upon land so conveyed, may be maintained in the name of the town.

If the town, in such case, comply with the implied conditions of the grant, by erecting upon the land a school house in which a school should be kept for a reasonable proportion of the time, they will not forfeit the land, nor any part of it, although they should use that portion of it, not wanted for the accommodation of the school house and necessary out buildings, for purposes not connected with the main object in view,—as if they should lease it for purposes of cultivation, or building for a fire engine, or hayscales, should be put upon it, or it should be used by an adjacent land owner as a passage way, or it should be used by those attending meeting at an adjacent meeting house for the purpose of accommodating their teams, or a corner of a meeting house were allowed to rest upon it, without dissent, or a room, in the same building occupied as a school house, should be finished and used by the town for the purpose of holding town and other public meetings.

Neither would the town, in such case, forfeit the land, by allowing the building standing thereon to be used for a number of years as an Academy, or county grammar school, under a charter from the state locating the school at that particular spot.

Such conveyances are always construed liberally, in support of the object contemplated.

Although the county court may have submitted to the jury the determination of that which is properly a question of law, yet if the finding of the jury is in accordance with the views of this court as to the law, the verdict will not be disturbed.

Trespass *quare clausum fregit*. The premises were described in the declaration as an acre of land in the village in Castleton, with a town house standing thereon; and the plaintiffs alleged, that the defendant entered upon the land and placed obstructions upon and around it, and broke and entered the town house, and hindered and obstructed the plaintiffs in the use of it. Plea, the general issue,

and trial by jury, April Term, 1846,—A. L. Brown, assistant judge of Rutland county court, presiding.

On trial the plaintiff gave evidence tending to prove the commission of the alleged acts of trespass by the defendant; and also gave evidence tending to prove the following facts.

On the twenty seventh day of March, 1786, Samuel Moulton conveyed by deed the premises in question to the inhabitants of the town of Castleton, for the consideration, as expressed, of love and good will, for the term of five hundred years, "to erect, build and set up a school house and to improve said land for the benevolent purpose of teaching and instructing a school on said land,"—and with this clause,—" upon which lot of land the said lessees propose to build a school house, and to improve for the purpose aforesaid, and for no other purpose." Shortly after the execution of this deed the plaintiffs entered into the possession of the premises and erected thereon a school house, having a swing partition, so that it could be occupied for holding religious meetings and town meetings; and it was so occupied during the life of the lessor; and it appeared that he assisted in erecting the house. In 1787, which was the year succeeding the erection of this house, the representative from Castleton, in the legislature of the state, procured the Rutland County Grammar School to be located upon this lot of land by its charter of incorporation,—the charter containing a provision, that the county of Rutland should not be at any cost or charge in completing or repairing the house. The meeting house in Castleton was built in 1790, and subsequently town and religious meetings ceased to be held in the school house. The school house was burned in December, 1790; and Moulton died in February, 1791. Subsequently another school house was built upon the same land. In 1805 an act of the legislature was passed, " confirming a Grammar School in the county of Rutland," and locating it at this house, so long as the inhabitants of Castleton should keep the same, or any other house at the same place, in good repair, for the purpose of accommodating such school, to the acceptance of the county court for such county. This school was organized and a building was erected for it upon these premises, and the school continued to be taught there until about the year 1836, when it was removed to another building, not standing on this land. In March, 1836, the town voted to finish a

portion of the building, which had been occupied by the grammar school, for a town room; and the first floor was finished, and was occupied by the town, until the commencement of this suit, and for the purposes of town and village convenience generally, for lectures, singing-schools, political meetings and exhibitions of science and art; and the second floor was occupied for a school room.

It farther appeared, that some hay scales were erected upon the land in question, eight or ten years previous to the commencement of this action, but without any authority from the town, and were removed after remaining there a few years. A building for a fire engine was also erected upon the premises, but without authority from the town, and remained there at the time of the commission, by the defendant, of the acts complained of by the plaintiffs. The town also leased a part of the land for the purpose of cultivation, and the rent, with the exception of one year, was paid into the town treasury for the use of schools;—and that one year the rent was paid into the town treasury without the particular purpose being designated, for which it was to be used; although, after the same had been paid in, it appeared that one of the selectmen ordered it to be treated as paid in for the use of schools. No evidence was offered, to show that any part of the money so paid in had been, in fact, expended for the use of schools. For a number of years Dr. Theodore Woodward used a portion of these premises for a passage way to and from his buildings. One corner (about eleven inches) of the Methodist meeting house was erected on this land; and the town took no steps to cause this to be removed. A portion of this land, also, was used by the congregation attending at this meeting house, for the purpose of fastening their horses and placing their carriages;—it did not appear, that the town had ever received any compensation for such use of the premises, or for the infringement upon the premises by the erection of the meeting house.

It appeared, that the wife of the defendant was the grand-daughter of Samuel Moulton, the grantor, and that her father, who was the son of Samuel Moulton, had deceased previous to the commission, by the defendant, of the acts complained of by the plaintiffs.

The defendant requested the court to charge the jury, that the plaintiffs derived no title to the land in question, except from the lease of Samuel Moulton; that what was the nature and extent of

Castleton *v.* Langdon.

that title must be ascertained from a legal construction of that instrument; that the lease only gave the inhabitants of the town of Castleton the right to erect a school house upon the land, and to improve the land for the benevolent purpose of teaching and instructing a school upon the land, and for no other purpose; that if the town used the land, or allowed it to be used, for any other purpose, it worked a forfeiture of the grant; that the land was not given as a school fund, but as a school house site, or location, and if used by the town, or allowed to be used, for any other purpose, it would work a forfeiture of the grant, even though the rents were applied for the use and support of schools; that the various uses of the land before mentioned, as for the location of hay scales and an engine house, the use of it for a passage way by Dr. Woodward, the use of it by the Methodist congregation, the location of part of the Methodist meeting house upon it, and the proceedings of the town in March, 1836, and subsequent thereto, as proved, were, as matter of law, inconsistent with the terms of the lease and worked a forfeiture; and that this suit could not, in any event, be maintained in the name of the town of Castleton. The defendant also requested the court to decide, as matter of law, what acts and uses were inconsistent with the purposes of this grant, and to instruct the jury, that, if they found such acts, or uses to be proved, there was a forfeiture of the grant.

But the court declined so to charge; but did instruct the jury, that the suit could be maintained by the town of Castleton; that if the jury should find, that the acts of the town, and the uses to which they put the land, were inconsistent with the provisions of the lease, there was a forfeiture, and their verdict should be for the defendant, otherwise for the plaintiffs; that the lease should be construed liberally for the plaintiffs; and that, if the plaintiffs had leased portions of the premises for other purposes than the use and support of schools, but the rent received therefor had been applied for that use, it would not work a forfeiture of the grant.

The jury returned a verdict for the plaintiffs. Exceptions by defendant.

*Pierpoint* and *Ormsbee & Edgerton* for defendant,

The language used in the lease shows a clear and explicit inten-

tion on the part of the donor, to give permission to improve the land for the purpose of a school house, and for no other purpose. We do not contend, that, because the lessees may have used the building erected for a school house for a mere temporary purpose, not inconsistent with its primary use, such occupancy would work a forfeiture; but whenever they do permanently appropriate the land to any other purpose, even though they appropriate the proceeds to the use and support of schools, they are without the condition imposed by the donee, and their use, right and privilege ceases. The charge of the court was clearly erroneous, in informing the jury, that if the plaintiffs had leased a portion of the premises for purposes other than the support of schools, it would not work a forfeiture of the lease; and also, in not instructing the jury what acts, in law, and as matter of law, were inconsistent with the rights of the plaintiffs under the lease; and in holding that the town of Castleton could maintain this action.

*Briggs & Williams* and *I. T. Wright* for plaintiffs.

The town of Castleton became possessed, under the lease, of an estate for years in the premises. The lease was founded upon a sufficient consideration, and was made to a sufficient lessee; *Inh. of Worcester* v. *Eaton*, 13 Mass. 371; it was accepted by the town, and the premises were appropriated to the use specified, and the use has been kept up to the present time.

There was, and could have been, no forfeiture of the rights which the plaintiffs obtained under the lease. A school has always been kept on the place, and still is. None of the acts complained of amount to a misuse, even; for the town are not liable for and cannot be prejudiced by the unauthorized acts of others by their intrusions. The avails of that portion, which could not be used for a school house, were appropriated for schools in town generally. The permitting town or religious meetings to be held upon the premises was no interference with the use designated in the lease. *Jackson* v. *Pike*, 9 Cow. 69. The estate granted by the lease was not conditional; it was a grant of land to be used for a particular purpose; and even if there had been a misuse, the estate, or interest, in the town, or public, would not have been thereby forfeited, but recourse should have been had to chancery,—which would have compelled

the grantees, or their agents, to have appropriated the premises to their proper use. The lease reserves no rights of re-entry for the non-performance of any trust; and no condition is to be construed to defeat an estate, unless it be introduced by formal and technical words, as *sub conditione*, &c., unless there be an express provision for re-entry. Co. Lit. 328–9. Bac. Abr., Condition A. No case can be found, where an estate like this has been adjudged forfeited. 2 Bl. Com. 268. If these acts would work thus, it was waived by the grantor's aiding in erecting the first school house for a common school, and for town and religious purposes; and these acts made a dedication by Moulton, aside from the lease.

The opinion of the court was delivered by

DAVIS, J. This case was before this court at the last term, on exceptions taken by the plaintiffs to the ruling of the county court at a previous term, when the judgment of the latter court, which was for the defendant, was reversed, and a new trial granted. The judge, who delivered the opinion of the court on that occasion, (REDFIELD, J.,) not being now present, and the case not being reported, I am but imperfectly acquainted with the points then raised and decided, and not at all with the reasoning employed to elucidate them.

It is quite unnecessary to spend any time upon some of the points now raised in the argument,—particularly that in relation to the right of the town to bring the action, and that in support of the request of counsel to instruct the jury what particular acts, or omissions, on the part of the lessees would work a forfeiture of the lease at law. The only questions of importance, which the case presents, respect the proper construction of the instrument of conveyance, under which the plaintiffs claim, and the charge of the court to the jury.

The defendant's counsel have not suggested any doubt of the validity of the conveyance from Samuel Moulton to the town, on account of want of adequate consideration, nor on any other account. That a legal consideration was necessary to uphold this conveyance, I have no doubt; and that the love and good-will borne by the lessor to the inhabitants of the town, expressed as the consideration for the

Castleton *v.* Langdon.

conveyance in the lease itself, was inadequate for that purpose, I have as little doubt.

It is an innovation upon the principles of the common law to require a consideration to sustain a deed of bargain and sale, or other instrument under seal, introduced probably from the courts of equity; but, though resisted strenuously, as many other salutary principles, having the same origin were, it has long since become firmly established in England. The same doctrine is incorporated into the law in several, if not all, of the American states, our own included. *Jackson ex d. Hudson* v. *Alexander et al.* 3 Johns. 484; *Fisher* v. *Smith*, Moore 378, 569; *Mildmays Case*, 1 Coke 175; *Jackson ex d. Allen* v. *Florence*, 16 Johns. 47; *Jackson* v. *Deloney*, 4 Cow. 430; *Jackson* v. *Pike*, 9 Cow. 69; *Stevens, Adm'r* v. *Griffith et al.*, 3 Vt. 448; *Wood* v. *Beach et al.*, 7 Vt. 522. In this state a consideration, though not stated in the deed, may be shown by parol. *Stevens* v. *Wood.*

Notwithstanding the general doctrine of the necessity of a consideration seems firmly established, it is very apparent, from numerous cases on the subject, that the courts are satisfied with any amount of consideration, however small, and almost any statement of it, however general. Although love and good will, in this connection, are of no validity, and although the case does not shew that any evidence of a direct pecuniary consideration was introduced, yet we recognize in the scope and object of the conveyance, viz. the benevolent purpose of having a school house erected and maintained on the land, in which a school should be kept for the instruction of the youth of the then existing and all future generations, during the term of 500 years, a consideration amply sufficient to support the conveyance. In 9 Cow. 69 a conveyance in fee of two acres to the supervisors, for the purpose of building thereon a court house, as also for increasing the value of adjacent property owned by the grantor, was sustained without any other consideration. Indeed, the court say that the first of these objects was sufficient.

It has been rather intimated, than directly contended in argument, that even though a school house were erected and maintained on the land, any other use of a portion of it, for purposes not connected with the main object in view, would operate as a forfeiture of the whole; or, at any rate, of so much as was so used, even though the

Castleton *v.* Langdon.

rents derived from such use were applied to the purposes of education in the town.    We cannot sanction either alternative.

That the conveyance must be regarded as subject to a condition, requiring the lessees to erect and maintain a school house, in which a school should be kept a reasonable portion of the time, is undoubtedly true.    That being done, the lease must be construed to vest in the lessees the use of the whole acre, for any purposes not inconsistent with the main object of the lease.    There was not only no error in the instructions of the county court, which assumed that an appropriation of the rents of such portion for educational purposes would satisfy the requirements of the contract, but the case did not require evidence of such appropriation.    There is nothing in the instrument indicating an intention in the lessor, that whatever advantages might, at any time, incidentally result to the town in the shape of rents, or otherwise, should be treated as trust funds, pledged to the main object.    At the time, 1786, the town was new, with few inhabitants, no villages, with few school houses, and but slender opportunities of acquiring the advantages of even a common school education, while on the other hand land was plenty and of little value.    The whole acre was not required for the erection of a school house.    A wood shed, yard and necessary appurtenant out buildings would occupy some additional space.    It was natural to set apart some definite quantity and place it under the control of the town, requiring on their part the erection and support of such buildings and appurtenances, as should carry into effect the benevolent objects of the public spirited lessor.    Farther than that he evidently did not intend to provide.    Such conveyances are always construed liberally, in support of the object.

But it is still insisted, that the town, with all allowable latitude of construction, have failed to satisfy what may be regarded as the just expectations of the donor, and that his heirs, one of whom is the defendant's wife, has the right to resume possession of the premises, in the same manner as their ancestor might have done, if now alive.

Granting the right, in case of forfeiture, for the present purpose, although under our laws this right would seem to belong to the administrator, rather than to the heir, we are all satisfied, that the facts disclosed here shew a substantial fulfilment of the conditions and limitations, on which the conveyance was received.    The house was built during the life of Mr. Moulton, in such a form as to subserve

other public purposes, than that of maintaining a school; and this, so far as appears, without objection on his part. In fact, he must be taken to have assented, as he assisted in the erection of it. About the time of his death the house was destroyed by fire, and a new one erected, on a different plan; as, in consequence of the erection of a meeting-house, there was no longer occasion for holding religious meetings, or town meetings, in the school house.

It has not been seriously contended, that the use of the new house for a grammar school, or academy, under a charter from the legislature, as a county school, for a number of years, should be considered as a perversion of the premises to a purpose foreign to that contemplated. Such an institution may probably not have been within the contemplation of the lessor, at the time of the lease; yet as the charter for it was obtained the next year, and by the exertions of the representative of the town, and this, so far as appears, without opposition from him; and above all, when we consider that at least it equally answered the purpose of imparting to the youth of the town of both sexes useful instruction, we have no hesitation in saying we find here no misappropriation of the property.

As already intimated, the defendant was not entitled to such instructions as he requested in relation to the placing of hay scales, a fire engine house, and some other small encroachments, on a portion of the land, whether with, or without, the consent of the town. These various uses were in no way inconsistent with the object of the lease, and afford no justification for the intrusion by the defendant upon the possession of the plaintiffs.

There is one part of the charge, which, though not subject to just exception on the part of the defendant, as operating a prejudice to him, was nevertheless novel and liable to formal objection. I mean that part of it, which referred it to the jury, to say whether the several acts and uses complained of were inconsistent with the lease, or not. This was rather matter of law, which it was the province of the court to determine. Under proper instructions the jury were to find whether a forfeiture occurred, or not, or, in other words, whether the defendant was guilty, or not. Without the requisite instructions they have found the issue in accordance with the views of this court as to the law of the case. There is, then, no occasion to disturb the verdict.

The judgment of the county court is affirmed.