CENTRAL LAND CO. *v.* CITY OF GRAND RAPIDS.

1. DEEDS—CONDITION SUBSEQUENT—TITLE.
   Under conveyance to city "upon the express condition that the * * * land * * * shall be used solely for park, highway, street, or boulevard purposes; and if any part thereof be not used for any of such purposes, or at any time cease to be used for such purpose,. or at any time be used for any other purpose, said part or parts shall immediately revert to the grantor," title passed to the city in fee subject to condition subsequent.

2. SAME—TITLE OF OIL AND GAS.
   Upon conveyance in fee, title to the oil and gas under the land passes by the grant from the grantor to the grantee, in the absence of a reservation.

3. MUNICIPAL CORPORATIONS—ULTRA VIRES—OIL LEASE.
   Whether or not the giving of an oil lease by a city was *ultra vires* is not a question which may be raised by a private indi-

---

Privilege of the owner of a fee simple defeasible to use the land, see 1 Restatement, Property, § 49.

Form of limitations in fee simple subject to conditions subsequent, see 1 Restatement, Property, § 45.

Strict construction of conduct alleged to constitute a breach of a condition subsequent, see 1 Restatement, Property, § 57, comment b.

vidual even though it be the grantor of the land in question under a deed with a condition subsequent, as only the State may raise such question.

4. DEEDS—CONDITION SUBSEQUENT—BREACH.

In action of ejectment by grantor under conveyance of land to city for park purposes and containing a condition subsequent, the lease by the city to an oil company to drill for oil did not constitute such a breach of the condition subsequent as to revest title in plaintiff, where it appears grantor was a subsidiary of a railroad company, that land was suitable for industrial and commercial purposes near other land owned by plaintiff, that city had expended large sums on highways for benefit of plaintiff and the railroad company pursuant to agreement whereunder land was acquired by city, that funds received and to be received will amount to a small fraction of amount expended and are earmarked by city for use of its parks and boulevards only, that the estimated use will probably last but two years more does not substantially interfere with use for which property was conveyed, and that parties cannot be placed *in statu quo* (3 Comp. Laws 1929, §12966).

5. SAME—CONSTRUCTION OF CONDITION SUBSEQUENT.

Conditions subsequent are to be strictly construed as they tend to forfeit estates.

6. APPEAL AND ERROR—ADMISSION OF EVIDENCE—IMMATERIAL ERROR.

Under record in case tried without a jury showing testimony which was stricken, the ruling of the trial court did not constitute reversible error where such testimony would not have altered final determination of the case (3 Comp. Laws 1929, § 15518).

CHANDLER, C. J., and BOYLES and SHARPE, JJ., dissenting.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted January 7, 1942. (Docket No. 25, Calendar No. 41,788.) Decided June 10, 1942. Rehearing denied September 8, 1942.

Ejectment by Central Land Company, a Michigan corporation, against City of Grand Rapids to recover land. On motion of defendant City of Grand Rapids, the Rex Oil & Gas Company, a Michigan

corporation, was made a party defendant. Judgment for defendants. Plaintiff appeals. Affirmed.

*Norris, McPherson, Harrington & Waer* (*John C. Shields, William R. Althans,* and *Arthur W. Penny,* of counsel), for plaintiff.

*Ganson Taggart* and *Clifford C. Christenson* (*Robert A. Johnson,* of counsel), for defendant City of Grand Rapids.

NORTH, J. This is an action in ejectment wherein the plaintiff-grantor charges the defendant city has breached a condition subsequent and that in consequence thereof title to the land in suit has reverted to plaintiff. On trial without a jury defendant city had judgment. Plaintiff has appealed.

By a deed dated October 22, 1937, plaintiff conveyed to defendant city two pieces of property in Kent county containing approximately 25 acres for park, street and boulevard purposes. The consideration is stated to be "one dollar and other good and valuable considerations." Defendant city claims that it paid consideration by means of contracting to build a road, which would benefit plaintiff's remaining land. Plaintiff sought to show that the conveyance was a gift. The deed contains the following condition:

"This conveyance is given upon the express condition that the two parcels of land above described shall be used solely for park, highway, street, or boulevard purposes; and if any part thereof be not used for any of such purposes, or at any time cease to be used for such purpose, or at any time be used for any other purpose, said part or parts shall immediately revert to the grantor, its successors or assigns; and it shall be lawful for the grantor, its successors, or assigns to reenter and repossess the same or any part or portion thereof, and thereafter

to peaceably hold and enjoy the same as if these presents had not been made.''

All went well until 1939. The city had undertaken to build the highways it had agreed to construct. In 1939, plaintiff found oil on its adjacent lands and commenced drilling operations. On July 12, 1939, defendant city entered into a contract with defendant Rex Oil & Gas Company whereby the latter was to drill for oil on the land which plaintiff had conveyed to defendant city for park, street and boulevard purposes.

Plaintiff immediately took steps to protect its claimed rights under the above condition in the deed. It wrote a letter to the city protesting and charging that the land would revert to it if such drilling should occur. Shortly thereafter, plaintiff served notice that it considered that the city had breached the condition, and that the city should surrender up the property. Finally, plaintiff brought this action against the city. Rex Oil & Gas Company intervened as a party defendant.

The main questions involved in this case are: 1. Did title to the oil and gas under the lands plaintiff conveyed to defendant vest in the city? 2. Was there a breach of the condition above quoted which has caused a reverter of all the land, or of the parts actually used in the drilling operations?

Title to the land here involved was conveyed by plaintiff to the defendant city in fee subject to condition subsequent. Upon conveyance in fee title to the oil and gas under the land passed by the grant from plaintiff to the city, see *Attorney General* v. *Railway Co.*, 263 Mich. 431 (94 A. L. R. 520); *Quinn* v. *Railway Co.*, 256 Mich. 143. In the latter case we said:

''The deed contains no reservation to grantors. The grantee took title to the gas and oil in place. If there is a pool common to the lands of both parties,

then, if defendant may not drill, plaintiff, by tapping the pool, may take oil belonging to defendant. Such a result could not be sanctioned."

To the same effect see 24 Am. Jur. p. 535, wherein it is also stated: "Thus, it appears to be settled that when the fee to land has been granted or dedicated to the public for use as a street or highway, any subterranean deposits of gas or oil therein pass with the fee and do not remain in the grantor or dedicator." Plaintiff herein cannot successfully charge that the giving of an oil lease by the city was *ultra vires*. *Quinn* v. *Railway Co., supra,* holds only the State may raise this question.

The primary question in this case is whether there was a breach of condition subsequent by the city in giving an oil lease to defendant Rex Oil & Gas Company. The factual background of the case must be borne in mind in passing upon this question. Plaintiff herein is an agency or subsidiary of the Pere Marquette Railway Company. In August, 1937, these two corporations entered into a contract with the city of Grand Rapids in consequence of which the city acquired title to the property involved in this suit. The agreement recited that title to the land was to be conveyed to the city "upon the terms and conditions and for the consideration hereinafter expressed, to which the city agrees." Among such terms and conditions it was provided that the city should convey to the railway company a parcel of land containing 4.07 acres and should construct certain streets or highways. The land was conveyed to the railway company and the highways were constructed at a cost of more than $400,000. Clearly, there was consideration for the conveyance of land in suit to the city.

At first blush it might seem that the maintenance and operation of one or more oil wells on this park

property would be in violation of the restricted purposes for which the land was conveyed to the city; but in determining whether there has been such a real and substantial violation of the condition in the deed to the city, consideration should be given to the purpose obviously sought to be accomplished by the condition embodied in the grant. This park land was so located and of such a character that it might have well been used for commercial or industrial sites. Plaintiff and the railroad company had nearby acreage of like character. Obviously, and we think primarily, plaintiff and the railroad company were interested in having the grant to the city limited in such a way that the property conveyed to it could not be developed as commercial or industrial sites in competition with like property owned by plaintiff or the railroad company. It also seems reasonably certain that in a strict sense it was not contemplated by the city's grantor that the land in suit should be used only for boulevard, street and park purposes. This would seem to appear from the fact that in the deed to the city the grantor reserved to itself and to its successors and assigns "the perpetual right and easement to lay and maintain one or more pipelines on, over and across the parcel of land herein first above described," being the 17-acre parcel of park land.

Defendants have taken rather extraordinary care in so operating the oil wells on the park property that this activity does not materially impair the use of the land for the purposes for which it was conveyed to the city. No storage tanks are maintained on the property, but instead they are somewhat distantly located on other property. The pipelines leading from the wells to the storage tanks are for the most part, if not wholly, laid underground in the park area, excepting where such pipes extend

along or across the highway passing through the park. Only a small, and not particularly unsightly or objectionable, structure is maintained at the location of each well. These buildings are not of a different character than an ordinary tool house or comfort station, such as are commonly maintained in park areas. And whether such buildings are particularly objectionable may well be considered in the light of the fact that on adjacent property oil development and operation of oil wells are being carried on, and this is true of adjacent property owned by plaintiff. The city's lease with defendant Rex Oil & Gas Company provides that the latter must use care in not interfering with the park facilities; and we think the record discloses there has been reasonable compliance with this provision. Another rather important phase of this record is that all proceeds from oil produced in this park area have been earmarked by the city for use of its parks and for boulevard purposes only. Then there is the further fact that in carrying out the plan contemplated at the time this property was deeded to the city it has expended upwards of $400,000 in the construction of roadways, some of which are to the material advantage of other lands held by plaintiff or the railroad company. This presents a situation wherein the former status of the respective parties could not be restored in the event of an adjudicated reversion of title to plaintiff; and we think this circumstance must be considered in reaching decision in the instant case. One more rather important aspect of the record is the testimony that oil production on these premises probably will not continue for more than approximately two years; and the value of the total estimated production will probably not exceed one-twentieth of the amount expended by

the defendant city incident to improving the park property and constructing roadways.

"Debasing of fee in grant to railroad company is not favored by law, but provisions tending thereto are to be construed against grantor." *Quinn* v. *Railway Co.* (syllabus), *supra.*

In *Los Angeles University* v. *Swarth,* 46 C. C. A. 647 (107 Fed. 798, 54 L. R. A. 262), in considering whether the fact that the University permitted a lessee to drill for oil on its land was a breach of a condition that the land be used for educational purposes, the court said:

"The general purpose of the original grant will not be defeated, but may be materially advanced in the pecuniary results to be derived from the development of the wealth supposed to be under the surface of the land."

While it may be in the nature of dictum, in *Town of Castleton* v. *Langdon,* 19 Vt. 210, the court in effect said that where rents from lands conveyed for use as a school were applied to the purposes of education, the condition was satisfied. *Bailey* v. *Wells,* 82 Iowa, 131 (47 N. W. 988), and *Chapin* v. *School District No. 2 in Winchester,* 35 N. H. 445, are authorities for broad or liberal construction by courts when passing upon challenged compliance with conditions embodied in title instruments under which land is held. Numerous decisions of this court, such as *Barrie* v. *Smith,* 47 Mich. 130, hold that conditions subsequent, tending as they do to forfeit estates, are to be strictly construed. In *Adams* v. *First Baptist Church of St. Charles,* 148 Mich. 140 (11 L. R. A. [N. S.] 509, 12 Ann. Cas. 224), the headnote reads:

"Land was devised to a church 'to be used as a parsonage and nothing else, and to be kept for that purpose and used for nothing else.' There was no

devise over. The house was not suitable for a residence for the minister, and it was his custom to rent it and live elsewhere. On ejectment by the residuary legatee, *held,* that there was no breach of condition subsequent which should work a forfeiture.''

We may say in the instant case, as Justice MOORE said in the last cited case: ''From whatever point of view the record before us is examined, in the light of these authorities, it does not disclose a breach of a condition subsequent, which should work a forfeiture of the property devised.''

Plaintiff disagreed with defendants' contention as to the actual consideration for the deed to the city, and sought by showing negotiations which preceded the execution of the preliminary contract to prove that the conveyance to the city was without consideration, rather than for the consideration stated in the contract. This testimony was taken in the trial court, but finally it was ruled the testimony should be stricken. Our consideration of this testimony which is in the record before us, and also of this phase of appellant's brief, satisfies us that if the testimony had not been stricken it could not have altered final determination of the case. Under such a record the ruling of the trial court did not constitute reversible error. 3 Comp. Laws 1929, § 15518 (Stat. Ann. § 27.2618).

Our conclusion is that this record does not disclose any real or substantial violation of the condition subsequent embodied in the deed under which the city of Grand Rapids took title from plaintiff. Neither the park property as a whole nor any substantial portion thereof is being used in any way or for any purpose which in any substantial degree interferes with the uses for which the property was conveyed to the city. 3 Comp. Laws 1929, § 12966

(Stat. Ann. § 26.46). The judgment entered in the circuit court is affirmed, with costs to appellees.

STARR, BUTZEL and BUSHNELL, JJ., concurred with NORTH, J.

SHARPE, J. (*dissenting*.) I am not in accord with the opinion of Mr. Justice NORTH. This is an action in ejectment and the rules of law governing such actions must control here.

I agree with Mr. Justice NORTH that the conveyance by plaintiff was subject to a condition subsequent with right of reverter on breach of the condition. The deed contained the following condition:

"This conveyance is given upon the express condition that the two parcels of land above described shall be used solely for park, highway, street, or boulevard purposes; and if any part thereof be not used for any of such purposes, or at any time cease to be used for such purpose, or at any time be used for any other purpose, said part or parts shall immediately revert to the grantor, its successors or assigns; and it shall be lawful for the grantor, its successors, or assigns to reenter and repossess the same or any part or portion thereof, and thereafter to peaceably hold and enjoy the same as if these presents had not been made."

It is undisputed that the city leased the lands in question to the Rex Oil & Gas Company on the basis of a venture by which the city was to receive a percentage of the earnings from producing wells; that the Rex Oil & Gas Company actually drilled two oil wells, installed the necessary pipe lines and pumps, and constructed buildings to house pumps and gasoline engines; that the wells are producing wells; that in the drilling operation and maintenance of the wells and pipe lines, an area having a radius of 75 feet around each well and an area of five feet along and on each side of the pipe line was used; that

pipes were laid from the wells to tanks 800 to 900 feet away; that the pipes were laid on the top of the ground except where they cross the boulevard; that each well is operated seven hours daily; that each well has its own pump housed in a building 10 by 16 feet; that there is considerable noise from the operation of the motors used in the operation; and that natural gas is exhausted in the air.

The language of the deed is clear and unambiguous and the only question is whether the conditions imposed upon the property have been breached. In determining this question we have in mind that the money spent by the city for highway purposes or the use that was intended to be made of the money derived from the oil wells have no bearing upon the issue involved in this case.

In the following cases the courts held that the contemplated or subsequent use of the property granted for park or street purposes was inconsistent with the conditions of the grant; and in an appropriate action such use was enjoined.

In *Marshall* v. *Standard Oil Company of California,* 17 Cal. App. (2d) 19 (61 Pac. [2d] 520), a strip of land was deeded to the city of Huntington Beach ''to be used exclusively for street purposes.'' The city subsequently leased part of the property for oil operations. The court enjoined the operation of the oil well; and in its opinion adopted the following holdings of several cases:

If the fee is in the public, it is held in trust, expressly or impliedly, that the land shall be used as a street, and it cannot be applied to any other purpose without a breach of trust.

Nothing can be clearer than that if a grant is made for a specific, limited and defined purpose, the subject of the grant cannot be used for another purpose, and the grantor retains still such an interest

therein as entitles him to insist upon the execution of the trust as originally declared and accepted.

The acceptance of a deed containing a covenant on the part of the grantee is equivalent to an agreement on the part of the grantee to perform the same.

It is a matter of common experience or knowledge that to operate the machinery used in boring an oil well it is necessary to erect a derrick. A strong odor proceeds from a gas or oil well, and the noise of a well in operation can be heard for a long distance.

That the erection of oil derricks and the sinking of oil wells upon a public street constitutes both a public and private nuisance admits of no argument.

In *Miller* v. *City of Columbia*, 138 S. C. 343 (136 S. E. 484), a tract of 17½ acres of land was conveyed to the city of Columbia for park purposes. Later the city attempted to erect a stadium and athletic field on a portion thereof. The court quoted the following rule:

" 'If a dedication is made for a specific or defined purpose, neither the legislature, a municipality, or its successor, nor the general public has any power to use the property for any other purpose than the one designated, whether such use be public or private, and whether the dedication is a common-law or a statutory dedication, and this rule is not affected by the fact that the changed use may be advantageous to the public.' *Grady* v. *City of Greenville*, 129 S. C. 89 (123 S. E. 494)."

In *Hill* v. *The Borough of Belmar*, 3 N. J. Misc. 254 (127 Atl. 789), land was dedicated for a public park. The city attempted to build a swimming pool in the dedicated property. The court said:

"We are of the opinion that the use to which it is proposed to put this land is a use other and adverse to the purposes of the dedication. A park

or public square cannot be said to be the same as a public swimming pool. Much testimony was devoted by respondent in the attempt to show that the construction of the proposed pool and its appurtenances would not materially obstruct a view of the ocean nor exclude the public, but the fact remains that such use is not reconcilable with the use of a park or public square.''

In *McIntyre* v. *Board of County Commissioners, El Paso County*, 15 Col. App. 78 (61 Pac. 237), a piece of land was dedicated for a public park. The county later attempted to build a court house upon this property. The court said:

''The trustee cannot impose upon it any servitude or burden inconsistent with these purposes, or tending to impair them.''

In *City of Hopkinsville* v. *Jarrett*, 156 Ky. 777 (162 S. W. 85, 50 L. R. A. [N. S.] 465), a piece of land was devised to the city for the purpose of a public park. The city attempted to use a part of the land to erect a public library. The court said:

''It is likewise well settled that if a grant or devise is made for a specific, limited and definite purpose, the subject of the grant cannot be used for another purpose, and a diversion of the subject of the trust from the purposes for which the trust was created may be enjoined.''

See, also, *Rowzee* v. *Pierce*, 75 Miss. 846 (23 South. 307, 40 L. R. A. 402, 65 Am. St. Rep. 625).

Defendant relies upon *Adams* v. *First Baptist Church of St. Charles*, 148 Mich. 140 (11 L. R. A. [N. S.] 509, 12 Ann. Cas. 224), and other cases as authority for its claim that there was no breach of condition subsequent which would work a forfeiture. In the *Adams Case, supra*, the will directed ''that the house and lots 4 and 5, Block H, in the village of St. Charles shall go to the First Baptist Church

to be used as a parsonage and nothing else, and to be kept for that purpose and used for nothing else."
 In the majority opinion, the court said:

"There is no devise over.  *  *  *

"As the words employed in the will are not such as require the construction that the land was devised upon condition, and as we may reasonably reach the conclusion that the testatrix did not intend such a meaning to be given to them, we must hold there is no condition."

In the above case, a condition subsequent was not created, while in the case at bar, the conveyance was on condition subsequent. Hence, the above case is no authority for the proposition to be solved in the instant case.

In the instant case the land was conveyed to the city on condition that its use be limited to park and boulevard purposes coupled with a reverter and right of re-entry for any breach at any time of this condition. The record affords ample proof that the use made of the park by the city was a violation of the use for which the park was intended.

The trial court held that outside of the discovery of oil and the drilling of the oil wells plaintiffs have no interest in the enforcement of the conditions subsequent.

Defendants rely upon 3 Comp. Laws 1929, § 12966 (Stat. Ann. § 26.46), which provides:

"When any conditions annexed to a grant or conveyance of lands are merely nominal, and evince no intention of actual and substantial benefit to the party to whom or in whose favor they are to be performed, they may be wholly disregarded, and a failure to perform the same shall in no case operate as a forfeiture of the lands conveyed subject thereto."

In *Hammond* v. *Hibbler*, 168 Mich. 66, we said:

"It is the law of this State that a condition or covenant in a deed of real estate, restricting the use to which the property may be devoted, and not opposed to sound public policy, may be sustained and enforced if the party in whose favor it is made or reserved has an interest in the observance of the condition or covenant."

In the case at bar plaintiff had an interest in the removal of oil from its property and the operation of oil wells by the city in property adjacent to plaintiff's property would tend to reduce the amount of oil recoverable by plaintiff from its own property.

In my opinion, plaintiff had more than a nominal interest in the condition annexed to the grant. It was a substantial benefit to it to have the conditions enforced as was contemplated when the grant was made. The breach of conditions on the part of the city of Grand Rapids entitled plaintiff to a reverter of the lands actually used by the city in the drilling and operation of the oil wells.

The judgment should be reversed and a judgment should be entered determining the Central Land Company to be the owner in fee simple of a piece of land 75 feet in diameter around each well, using the casing as an axis, and a strip of land five feet wide along and on each side of the pipe line from the pumps to the storage tanks with the right of ingress and egress thereto. Neither party should recover costs.

CHANDLER, C. J., and BOYLES, J., concurred with SHARPE, J. WIEST, J., did not sit.