VILLAGE OF KALKASKA v SHELL OIL COMPANY

Docket No. 87230. Submitted June 24, 1986, at Grand Rapids. Decided November 19, 1986. Leave to appeal denied, 428 Mich —.

The Village of Kalkaska, the County of Kalkaska, and MGM Petroleum, Ltd., brought an action in the Kalkaska Circuit Court against Shell Oil Company, the State of Michigan, and certain landowners. Plaintiffs sought a declaration that the public had a fee simple absolute in the oil, minerals, and gases located underneath certain streets dedicated to public use as reflected in three plats recorded in 1876 through 1918. The streets were already within Shell Oil Company's drilling units when MGM Petroleum obtained oil, mineral, and gas lease rights from Kalkaska Village and Kalkaska County. The trial court, William A. Porter, J., granted summary judgment in favor of defendants and dismissed plaintiffs' complaint. Plaintiff's appealed.

The Court of Appeals held:

1. The Village of Kalkaska did not acquire a fee simple absolute in the streets and the oil, minerals, and gases lying underneath them at the time the parcels of property were platted. Rather, the village obtained a base fee limited to the surface of the streets and subject to the qualification or condition subsequent that the streets be continued to be used as streets.

2. The Village of Kalkaska is, therefore, possessed of nothing which it may sell or lease. The rights to all oil, gas, and other minerals underlying the streets which are not reasonably and practically available and reasonably necessary and incidental to the maintenance and the operation of the streets are owned in fee by either the owners of the undivided fee interests in the adjoining lots, or by those persons or entities which have reserved in prior conveyances fee title to the same.

Affirmed.

REFERENCES

Am Jur 2d, Gas and Oil §§ 66 et seq.

Estoppel of oil and gas lessee to deny lessor's title. 87 ALR2d 602.

Estates in Property — Platted Property — Streets — Mineral
   Rights.

   The dedication of parcels of property for use as public streets, as
     represented in plats recorded in 1876 through 1918, vested in
     the village within the limits of which the properties platted
     were included a base fee in the surface of the streets subject to
     the qualification or condition subsequent that the streets be
     continued to be used as streets; the rights to all oil, gas, and
     other minerals underlying such streets which are not reason-
     ably and practically available and reasonably necessary and
     incidental to the maintenance and the operation of the street
     are owned in fee by either the owners of the individual fee
     interests in the adjoining lots, or by those persons or entities
     which have reserved in prior conveyances fee title to the same.

*William S. Gregory* and *James M. Olson,* of
counsel, for Village of Kalkaska, County of Kal-
kaska and MGM Petroleum, Ltd.

*Mika, Meyers, Beckett & Jones* (by *Mark A.
Kehoe* and *Elizabeth C. Keller,* for Shell Oil Com-
pany.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, and *Thomas J. Emery,
Michael C. McDaniel,* and *Russell E. Prins,* Assis-
tant Attorneys General, for the State of Michigan.

*Wayne Richard Smith,* for Owners of Lots Adja-
cent to Platted Streets and Alleys.

Before: R. B. Burns, P.J., and R. M. Maher and
F. D. Brouillette,* JJ.

Per Curiam. Plaintiffs appeal as of right from a
trial court order granting defendants' motion for
summary judgment.

In 1976, Shell Oil Company, with the cooper-
ation of the Michigan Department of Natural
Resources, created two eighty-acre drilling units

---

* Circuit judge, sitting on the Court of Appeals by assignment.

within the Village of Kalkaska. The drilling units are located within three recorded plats. Streets within the plats are designated for public use.

The first plat was recorded in 1876, when the operative plat act provided that platting

> shall be deemed a sufficient conveyance to vest the fee of such parcels of land as are therein expressed, named, or intended for public uses in the county in which town, city, village, or additions lie, in trust to and for the uses and purposes therein named, expressed, or intended, and for no other use or purpose whatever. [1839 PA 91, § 2, as amended by 1859 PA 35.]

The second plat was recorded in 1888, when the operative plat act provided that platting

> shall be deemed a sufficient conveyance to vest the fee of such parcels of land as are therein expressed, named, or intended for public uses in the county in which the said town, city, village or addditions lie in trust to and for the uses and purposes therein named, expressed, or intended, and for no other use or purpose whatever. [1885 PA 111.]

The third plat was recorded in 1918, when the operative plat act provided:

> The map so made and recorded in compliance with the provisions of this act shall be deemed a sufficient conveyance to vest the fee of such parcels of land as may be therein designated for public uses in the city or village within the incorporate limits of which the land platted is included, or if not included within the limits of any incorporated city or village, then in the township within the limits of which it is included in trust to and for the uses and purposes therein designated, and

for no other use or purposes whatever. [1887 PA 309.]

At issue in this case are the ownership rights to the oil, minerals and gases located beneath the streets of the three plats. Plaintiffs filed a complaint seeking a declaratory judgment that, by virtue of the above-cited plat acts, the public has a fee simple absolute in the streets and the ground beneath the streets.[1] Defendants claim that the plat acts did not convey title in fee simple absolute to the village for the subsurface oil, minerals and gases, and that the public's interest in the streets is limited to the surface.

The parties brought motions for summary judgment. A hearing was held on September 20, 1984. On July 26, 1985, the trial court issued a written opinion holding:

> The Village of Kalkaska is possessed of nothing which it may sell or lease. The rights to all oil, gas, and other minerals underlying platted streets, roads, and alley ways which are not reasonably and practically available and reasonably necessary and incidental to the maintenance and the operation of such public ways are owned in fee by either (a) the owners of undivided fee interests in the adjoining lots, or (b) by those persons or entities which have reserved in prior conveyances fee title to the same.

On August 20, 1985, the trial court entered an order granting summary judgment in favor of defendants and dismissing plaintiffs' cause of action with prejudice.

We affirm the decision of the trial court and adopt its well-reasoned opinion as our own:

[1] In May, 1981, MGM Petroleum obtained lease rights to the oil, minerals and gases from the village and Kalkaska County.

The initial question becomes one of statutory interpretation or construction. The principle or cardinal rule of the same is to determine the legislative intent from reference to the statutory language itself, if possible.

It is evident that the Legislature did not intend that the recordation of the subject plats would constitute a conveyance to the municipality of the roadways in fee simple absolute as the statute did not so say. The statutory conveyance referred to is the conveyance of a "base fee." *Kirchen v Remenga,* 291 Mich 94, 112; 288 NW 344 (1939). It is a fee subject to qualification or a condition subsequent and is thereupon determinable. That condition or qualification is that the street or alley be continued to be used as such and if such use be abandoned, the fee in the municipality would terminate.

The Legislature continued further and said that the determinable fee was held in trust to and for the purposes therein designated. By such language, the Legislature evidenced a further intent to limit the nature and extent of the interest of the trustee municipality to what was reasonably sufficient to exercise its responsibility.

Finally, after making the estate defeasible and determinable and held in trust subject to such fiduciary responsibility, the Legislature went on additionally to say that the fee was to be used for no other use or purposes than those designated, whatsoever. This language evidences a legislative intent that the street or alley so designated could not be used for any purpose in addition to the same. The Legislature was not satisfied that the use of the property received by the public be used as a public way or that the fee would otherwise terminate in the municipality. The Legislature went further to state with specificity that such use was the exclusive purpose for which such conveyance could be utilized. The addition of this language reflects an intent to preclude the utilization of noninterfering uses or purposes in addition to those specifically designated.

The metes and bounds description and drawing of the plat limit the horizontal boundaries of the estate conveyed. The conveyance in trust, subject to the conditions and qualifications and limited only to those uses and purposes, limit the trustee to utilization of the property to the extent necessary to effect the purposes and uses designated and anything reasonably and necessarily incidental thereto. The latter, as a practical matter, albeit with less precision, affects, defines, and limits the vertical interest in such property received by the "trustee." The trustee takes whatever fee that is reasonably necessary for the maintenance and utilization of the road as a roadway and nothing more. The court is of the opinion that the statutory language reflects such legislative intent. Thus, if, and to the extent, the plaintiffs can prove that the gas and oil and/or any other mineral deposits were of a reasonable and practical utility for the use or maintenance of the property as a street or alley, the taking of the same by the defendants may be actionable to such extent. On the other hand, were the defendants' "trustees" unable to establish that the same were, as a practical matter, reasonably available for utility for the maintenance or use of the property for its designated purpose, it would have no interest in or right thereto.

The case law in this state, although many faceted, and with a large number of distinguishing variables, when critically examined, appears to support such apparent legislative intent.

The Court in *Rathbun v Michigan,* 284 Mich 521, 534; 280 NW 35 (1938), recognized that a statute which required conveyance by the state of "an absolute title and fee" would allow the state to convey less than the fee to the surface rights and all other rights, including gas, oil, and mineral rights beneath the surface of the land. The Court said that such statutory language did not preclude the reservation of such minerals and the severance of the same from the surface.

"The term 'absolute' as used in the statutory

language, 'absolute title . . . in fee,' refers to the nature of the title and not to the nature of the property included under such title." 284 Mich at 534.

It is this court's opinion that the last phrase of the subject statute "and for no other use or purpose whatever" was intended to have the effect of a reservation of so much of the estate as was not otherwise reasonably necessary for the uses and purposes designated therefore. Such language would otherwise be without purpose and such interpretation, contrary to the rules of interpretation of statutes which require that meaning should be given to every word and phrase and have some purpose. *Wyandotte Savings Bank v State Banking Comm'r,* 347 Mich 33; 78 NW2d 612 (1956).

Municipalities have no proprietary interest in the land in the street as their private property. A municipality acquires no beneficial interest in the land dedicated to the public use as a street. It has, in the public street, no title or interest of which it can divest itself by deed or other conveyance. The use of such land has already been determined by the dedication to the public use. By constitution and statute, the supervision and reasonable control of all streets are given to municipalities but powers extend no further. *In re Albers' Petition,* 113 Mich 640; 71 NW 1110 (1897); *Detroit v Detroit City Railway Co,* 76 Mich 421; 43 NW 447 (1889).

Case law more directly supports this court's interpretation of the statute. In *Cuming v Prang,* 24 Mich 514, 517-518 (1872), the Court held:

"Lands dedicated to the public as a highway, are by law subject only to the use of the public as such. The fee remains in the owner of the adjacent property of which it was a part, subject to the public easement. It is true that in this state, trees and the soil on a highway may be used in the improvement of it. But I do not understand that the public would have any title to a mine, a bed of peat, or turf, or gravel, found therein.

"Therefore I cannot find as a conclusion of law,

in the absence of any proof tending to show that the lands within the limits, of the alley in question were condemned and taken by the city under the provisions of its charter, that the defendant was justified in taking the five hundred and thirty-one yards of gravel found in the alley on the ground that the gravel was the property of the city of Grand Rapids.

"If it was the property of the city, his authority, derived through, and by means of, the arrangement with the people to whom permission was given to grade the alley, would be wholly immaterial in the case, for the plaintiff could in that case have no cause of action against him for removing it. Whether the title to the gravel was in the plaintiff or in the city, is not material in the consideration of the extent of defendant's authority. It would be the same in either case. His authority would extend no further than to justify him in using or removing as much soil or gravel as would be necessary and proper in the execution of the improvement, and I understand that the consent of the plaintiff to the making of the improvement is to the same effect and goes no further."

The Court went on then to rule that because the gravel so removed was not used for the improvement of the alley but the defendants excavated the gravel and drew it away for construction on another street, they were liable therefore. The Court ruled that the defendants' authority was derived from the municipality, Grand Rapids, and that irrespective of who had title to the gravel, it could not be taken and utilized other than for the improvement of the alley even if the title to the same was in Grand Rapids.

In *Bissell v Collins,* 28 Mich 277, 278 (1873), the Court, in a case dealing with a street that was duly laid out on a plat and recorded as provided by law, followed *Cuming v Prang, supra,* but held that the utilization of the gravel found within the street or highway was not limited to the mere block from which it was taken, holding it was proper to use the same, thereby distinguishing the

same from *Cuming*, which dealt only with a block-long alley.

It is the court's opinion that *Cuming, supra*, and *Bissell, supra,* are directly precedentially dispositive of the instant case.

In *Wayne Co v Miller*, 31 Mich 447, 448-449 (1875), the Court held:

"It is not very clear what sort of title the act of 1839 designed to vest in the county; whether a fee simple, or only a conditional fee, or possibly a perpetual easement. There are some questions which suggest themselves here which we should be quite indisposed to encounter until it should become absolutely essential. Unquestionably the purpose was to vest in the county such a title as would enable the public authorities to devote the lands to all the public uses contemplated in making the plan, and to charge them with corresponding obligations when the title should vest. It is very clear that no purpose existed to give a title in the nature of a private ownership. This is all we deem it necessary to say on this point in the present case, and further questions must be dealt with when they arise."

In *In re Albers' Petition, supra,* pp 641-642, the Court said:

"Our understanding is that the city has no proprietary interest in the land, all of its authority over it growing out of its legal duty to maintain the public ways, which are placed in its charge. *City of Detroit v Railway Co,* 76 Mich 421. Such interest in the land is in the abutting proprietors ordinarily, and is apparently so in this instance, and by the express provision of the statute their rights are recognized. This statute has been applied in many cases and its constitutionality does not appear to have been questioned."

The Court said in *Scudder v Detroit,* 117 Mich 77, 79-80; 75 NW 286 (1898):

"Where one conveys land bounding upon a public highway, or lots upon a plat, representing them to be bounded by a street, the grantee takes the land to the center of the highway or street. *Snoddy*

*v Bolen,* 122 Mo 479; 24 SW 142; 24 LRA 507 (1893), and authorities there cited. Under a statute identical with our's, it was held that a conveyance of a lot abutting on the street, without any express limitations, conveyed all the interest to the center of the street or alley. *Tousley v Galena,* etc., *Smelting Co,* 24 Kan. 328. The reservation in the dedication in that case was of 'all the mineral under the surface of such streets and alleys.' The conveyance of the lot contained no reservation. Justice BREWER said: 'If the dedicator may reserve nothing in the street, his conveyance of the lot passes nothing in the street; but, if he reserves anything in the street, his conveyance of the lot passes the reservation.' The reservation in this case gave the platter the same interest in the streets that he would have had without the reservation, and his grantees take by virtue of their deeds all the rights he had to the center."

The Court said in *Loud v Brooks,* 241 Mich 452, 456; 217 NW 34 (1928):

"We hold the correct rule to be that a conveyance of land bounded on a highway, street, or alley carries with it the fee to the center thereof, subject to the easement of public way, provided the grantor at the time of conveyance owned to the center and there are no words in the deed showing a contrary intent, whether the dedication of the highway, street, or alley has been accepted or not, and whether it has been opened or not."

It should be recognized that at the time of the enactment of the original statute, as well as the amendment of 1859, the vast majority of public ways were in the nature of easements. See *Baker v Johnston,* 21 Mich 319, 340 (1878); *People, ex rel Director of Dep't of Corrections v LaDuc,* 329 Mich 716; 46 NW2d 442 (1951).

Courts in other jurisdictions have interpreted statutes with similar language as this court opines. See *Mallory v Taggart,* 24 Utah 2d 267; 470 P2d 254 (1970); *Mochel v Cleveland,* 51 Ida 468; 5 P2d 549 (1930); *Neil v Independant Realty Co,* 317 Mo 1235; 298 SW 363 (1927); *City of Leadville v Bohn Mining Co,* 37 Colo 248; 86 P 1038 (1906).

The Village of Kalkaska is possessed of nothing which it may sell or lease. The rights to all oil, gas, and other minerals underlying platted streets, roads, and alley ways which are not reasonably and practically available and reasonably necessary and incidental to the maintenance and the operation of such public ways are owned in fee by either (a) the owners of undivided fee interests in the adjoining lots, or (b) by those persons or entities which have reserved in prior conveyances fee title to the same.

Plaintiffs cite *Central Land Co v Grand Rapids,* 302 Mich 105, 107; 4 NW2d 485 (1942), as support for their position. The same is distinguishable from the instant case. The conveyance therein was made by deed and was to be used solely for a park, highway, street, or boulevard purposes; and further read:

"[I]f any part thereof be not used for any of such purposes, or at any time cease to be used for such purpose, or at any time be used for any other purpose, said part or parts shall immediately revert to the grantor, its successors or assigns . . . "

Defendant therein entered into a gas and oil lease whereby lessee was to drill on a 25-acre park. Plaintiff brought suit, contending that defendant's action had breached the condition of the conveyance and it was entitled to reversion. The Court outlined the facts of the case and held that the drilling of a well on the park did not constitute a violation of the restricted purposes for which the land was conveyed to the city, on the facts of the case. It looked at the purpose sought to be accomplished by the condition and the surrounding circumstances, as well as the intent of the parties, and found that it was the primary intent of the plaintiff in having the grant to the city limited in such a way so it could not be developed as commercial or industrial sites in competition with like property owned by the plaintiff or the railroad company in that area. The court also found that the actual activity on the property was minimally objectionable, particularly

in light of the oil development and operation existing on immediately adjacent property and, finally, that the actual oil operations in the park did not interfere with park facilities. The Court went on to find that the production would only continue for about two years and that the city had already expended upwards of $400,000 in the construction of roadways, some of which were material to the advantage of other lands held by the plaintiff, in part of the agreement by which the plaintiff made the conveyance and thus the parties could not be returned to their original positions. The Court held that the actions of the defendant did not constitute a sufficient breach of a condition to affect reversion under the circumstances therein. As to the ownership of the gas and oil, the Court merely held that a deed of conveyance that contains no reservation of the gas and oil, passes the same, citing *Quinn v Pere Marquette Railway Co,* 256 Mich 143; 239 NW 376 (1931). In *Quinn, supra,* p 150, the Court held:

"So our statutes furnish no ground for holding, by analogy to condemnation, donation, or otherwise, that a title taken by purchase is merely an easement or that it is subject to limitations of tenure not expressed in the deed. A railroad company may acquire in a strip of land for right of way, as well as in other real estate, title in fee absolute, determinable fee, an easement, lease, or license, as may another corporation or an individual. Where the property is taken by purchase, the character of the estate is determined by the terms of the grant, as in other cases."

Affirmed.