## Charlotte Cuming v. Charles Prang.

*Alleys : Title of abutters : Public rights : Title to gravel.* In an action for the value of certain gravel taken by defendant, partly from plaintiff's lot in the city of Grand Rapids, and partly from an adjoining alley between its center and the side adjoining the lot, it will be presumed, in the absence of any showing to the contrary, that the plaintiff's ownership extended to the center of the alley, subject only to the public right in the same as a highway, and for other public purposes; and that she was therefore owner of, and entitled to, the gravel to the center of the alley, with the right to take and remove the same to a depth which should not exceed the grade of the alley which might be adopted by the city authorities.

*Grading alleys : Removing the soil to fill up streets.* Whether this right is subject to the right of the city authorities to use any portion of the soil or gravel for the purpose of filling up any part of the alley within the block, to bring the alley to such grade as they should adopt:—*Quære?*

But the public authorities would have no right, as against the plaintiff, to remove such gravel entirely from the alley to fill up streets elsewhere in the city.

*Permission of common council to grade alleys : Removing soil to fill up streets.* Whether permission given by the common council of a city to owners of lots on one side of an alley, to grade the alley at their own expense and under their own management, would give such owners all the rights to the use of the soil on the opposite side of the alley, that the city would have possessed had the grading been done by the public authorities:—*Quære?*

Such permission would not give the right to a contractor employed by such lot owners, as against the plaintiff, who owns a lot on the opposite side of the alley, under pretense of grading the alley, to take the gravel adjoining plaintiff's lot, without her consent, and carry it off to fill up a street elsewhere, under a contract which he had with the city.

*Consent: License: Removing soil from alley.* Consent, on the part of the plaintiff, simply to the grading of the alley by such lot owners without charge upon her, without some proof of usage or custom to control or explain the meaning of this license and in the absence of any evidence that she, upon being called

upon for that purpose, had refused to assign or allow him any convenient place to deposit such gravel, would not authorize such contractor to carry it off beyond the alley and sell it for his own profit, leaving the alley itself ungraded.

*Costs: Right to injure lands.* The plaintiff is entitled to costs under the statute (*Comp. L.*, § *5597, Sub. 2*) giving costs to a plaintiff recovering judgment in any action wherein a right "to any easement in any land, or to overflow the same, *or to do any other injury thereto*" shall "come in question on the trial of the cause." The right would be no less clear under the same section as amended in 1871.—*Sess. L. 1871, p. 192.*

*Heard April 4. Decided April 23.*

Case made after judgment from Kent Circuit.

The cause was referred to a referee, who reported as follows :

The plaintiff in this cause during the time covering all the transactions mentioned in this case, was, and now is, the owner in fee of certain lands along the east side of an alley, leading from the east end of Bronson street, north to Bridge street, in the city of Grand Rapids. In this land was a deposit of gravel of considerable extent and value which cropped out within the limits of the alley.

The length of the alley between these streets is five hundred feet. In the fall of 1869, the people owning lots on the west side of the alley obtained permission of the common council of the city, to grade the alley at their own expense and under their own management; through Mr. Mohl, one of the lot owners, they made a contract with the defendant to do the work. The defendant saw the plaintiff after being engaged by Mohl, and the plaintiff consented to the grading of the alley, but no charge to be made on her for it—the defendant to get his whole pay from the owners on the west side of the alley. The defendant, in the winter of 1869, or spring of 1870, drew the gravel found in the alley and used it on Fountain street, which he was engaged in graveling and grading under a contract with the city.

He was engaged in excavating the alley north of the gravel bed when the firm of Moore & Brooks, contractors,

purchased of the plaintiff, by parol agreement, a sufficient amount of gravel to gravel Prairie street according to certain plans and specifications (the amount being one thousand three hundred and seventy-eight cubic yards), and were to have the exclusive control of the whole bed during a certain specified time, for the purpose of removing their quantity of gravel. Moore testifies that he had this particular face of gravel in view—the same that was subseqently taken by defendant,—and mentioned it to the plaintiff in their negotiation. It was a nice face of gravel, he said. They were not, however, limited to any particular frontage of the bed, nor to any particular portion of the bed; nor limited in any manner, except as to time, and that they should not disturb a certain road near by, called the Crescent road.

Before they drew any gravel, the defendant dug out and drew away from the bed, east of the east line of the alley, and on plaintiff's lot, six hundred and forty-nine cubic yards of gravel.

From within the limits of the alley, and east of the center thereof, he had already taken five hundred and thirty-one cubic yards, making one thousand one hundred and eighty yards in all, forming one continuous pit or excavation, extending from the center of the alley east into the plaintiff's lot.

This quantity, however, did not exhaust the bed. Moore & Brooks subsequently took a portion of the quantity they had bargained for, out of the same bed, and there was enough left to fill their contract many times over without disturbing the Crescent road. They relinquished the idea of filling the Prairie-street contract entirely from this bed, because the defendant had taken away this particular face of gravel, and it became more expensive to excavate it.

This action is brought by the plaintiff to recover from

the defendant the value of the gravel taken by him from the alley and lot adjoining.

Counsel for defendant claims that the permission of the common council, given to the people on the west side of the alley to grade it, conferred the same power on them as the city would have in the premises, if making the improvement in the usual manner as a public improvement; that the sand and gravel necessary to be removed in executing the work, belongs to the public, and that the defendant, being employed by those people to do the work, was justified in removing the gravel in the alley, and it was immaterial what disposition he made of it.

I cannot assent to this proposition. Lands dedicated to the public as a highway, are by law subject only to the use of the public as such. The fee remains in the owner of the adjacent property of which it was a part, subject to the public easement. It is true that in this state, trees and the soil in a highway may be used in the improvement of it. But I do not understand that the public would have any title to a mine, a bed of peat, or turf, or gravel, found therein.

Therefore I cannot find as a conclusion of law, in the absence of any proof tending to show that the lands within the limits of the alley in question were condemned and taken by the city under the provisions of its charter, that the defendant was justified in taking the five hundred and thirty-one yards of gravel found in the alley, on the ground that the gravel was the property of the city of Grand Rapids.

If it was the property of the city, his authority, derived through, and by means of, the arrangement with the people to whom permission was given to grade the alley, would be wholly immaterial in the case, for the plaintiff could in that case have no cause of action against him for removing

it. Whether the title to the gravel was in the plaintiff or in the city, is not material in the consideration of the extent of defendant's authority. It would be the same in either case. His authority would extend no further than to justify him in using or removing as much soil or gravel as would be necessary and proper in the execution of the improvement, and I understand that the consent of the plaintiff to the making of the improvement is to the same effect and goes no further.

The defendant may therefore justify the removing and using the five hundred and thirty-one yards of gravel found in the alley by showing that he necessarily and properly removed or used it in the prosecution of the improvement. Upon him the burden of proof rests to show this. On this point the testimony of J. C. Moore is, that when he made the purchase of plaintiff of gravel for Prairie street, the defendant had got by the point where this gravel was, in excavating the alley, and there was a nice face of gravel there. From which it may be inferred that he had excavated the alley at this point, and removed that portion of the gravel in doing so, leaving the face of the bed upon plaintiff's land exposed to view.

It appears that the south end of the alley had been previously excavated by other parties, to the distance of two hundred, or two hundred and fifty feet north from Bronson street. Mr. Mohl says that after the alley was brought down to grade, the bank on the east side, opposite his lot, was from thirty to forty feet high. His lot is two hundred and fifty feet from Bronson street. The bank began to be high on Steketee's lot, which is two hundred feet from Bronson street. South of that, sand and gravel had been taken from the bank on the east side, up to about the south side of the gravel bed in question. The surveyor Smith testified that there was a point between that excavation and

the hole made in the gravel bed of plaintiff by the defend-ant. And although it appears that there was a passable road-way to Mohl's barn, inasmuch as the alley was twenty feet wide, it seems probable that there was some excavation to be made in the east part or side of the alley, commencing at the point mentioned by the surveyor, and that the five hundred and thirty-one yards of gravel was a part of that excavation, as may be inferred from the testimony of J. C. Moore.

It is considered, then, that defendant properly removed this quantity of gravel in the prosecution of the improvement of the alley.

It does not appear in evidence, however, that the defendant used any of this gravel in improving the alley. On the contrary it appears that he did not grade the alley, but merely excavated it and drew the gravel away to Fountain street.

Did the defendant acquire a title or right to, or any ownership in, the gravel so removed? Could he rightfully appropriate it to his own use without compensation? Suppose ore, timber, or other valuable property be found in a highway, and it becomes necessary to remove it in order to effect the improvement of the highway, no doubt the removal would be justifiable, and possession for that purpose lawful. But it is the possession of the property of another. With that possession, is coupled the right to remove the subject of it from the highway; the removal is also a duty. The most natural way of performing it, would be to put it upon the adjacent lands of the owner. It does not appear that it was impossible or impracticable to have done so in this case, and even if it was so, the plaintiff might have pointed out a convenient place for its deposit, if she had been notified, and then it would have been the duty of the defendant to have put it there. But there

seems to have been no such nice care on the part of the defendant to regard the right of ownership in the gravel. In fact, there seems to have been an intention on his part, from the first, to take the gravel for his own use.

I do not think he had any right to do this without the consent of the plaintiff, and no such consent appears in the evidence; nor do I think that any presumption of such consent legitimately arises from any of the facts proved or conceded.

I therefore conclude that the five hundred and thirty-one yards of gravel, taken from the alley, was the property of the plaintiff; that it was not necessary, or at all used in the improvement of the alley, but was taken by the defendant and appropriated to his own use, and for the value of it he is liable to the plaintiff.

As to the six hundred and forty-nine yards taken from the lands, not within the limits of the highway, the defendant's counsel claims that the plaintiff cannot recover for it, because she had sold it to Moore & Brooks, and they, if any one, and not she, could maintain the action. The evidence of that arrangement between Moore & Brooks and the plaintiff was objected to by the plaintiff's counsel, and received under the objection that it was incompetent, the contract of purchase being void by the statute of frauds as conveying an interest in lands; and if it had the effect to convey any specific portion of that gravel bed to Moore & Brooks, as claimed by defendant's counsel, I should say the objection was good. But I do not so regard the contract between the plaintiff and Moore & Brooks. That was a purchase of a certain number of yards of gravel to be excavated by Moore & Brooks, from any portion of the bed, where they saw fit to get it. They were limited only by the Crescent road, and might have taken their quantity even after the six hundred and forty-nine yards were taken

by the defendant, if they had chosen to do so. It was a purchase of a severable quantity of the realty, and even if valid for any purpose, could not divest the owner of the realty of her right to bring her action against a trespasser for an injury to the freehold. No question having been made before me as to the right of the plaintiff to recover the value of the gravel in this form of action, I think she is entitled to recover the value of the one thousand one hundred and eighty yards.

As to the value, the testimony shows that gravel then was worth from fifteen to eighteen cents per yard, according to the amount of stripping necessary in excavating it. The testimony shows that there was very little stripping necessary at this point, and I conclude that the value of the gravel taken by the defendant was sixteen and a half cents per cubic yard.

Judgment should be rendered for the plaintiff, therefore, for the sum of one hundred and ninety-four dollars and seventy cents.

The defendant excepted to that part of the report of said referee which finds as conclusions of law that the plaintiff owned the gravel lying in the alley from Bronson street to Bridge street; and that the said gravel was not the property of the public and subject to the control and disposal of the city of Grand Rapids for public uses; and that the defendant is liable to the plaintiff for the value of the gravel by him removed from the alley and carried to Fountain street.

The court sustained these exceptions, and rendered judgment for the plaintiff only for the value of the gravel taken from her lot. The plaintiff excepted to this decision of the court.

On the subject of costs, the court found:

1. That the plaintiff, by the law regulating recovery of costs in force at the time of the commencement of this cause, is entitled to recover costs against the defendant, the recovery of the plaintiff being more than one hundred dollars, although such recovery is to an amount less than two hundred dollars.

2. That the plaintiff is not entitled to recover costs by the law regulating the recovery of costs enacted since the commencement of this suit, and that such law cannot affect the rights and liabilities of the parties in this regard as they existed when said cause was commenced.

3. That the title to land does come in question in this cause, so as to enable the plaintiff to recover costs according to the statute regulating costs in such cases.

The plaintiff excepted to the second of said findings on the question of costs, and she brings the cause to this court.

*William W. Taylor*, for plaintiff.

*Thomas B. Church*, for defendant.

CHRISTIANCY, CH. J.

This was an action of assumpsit brought by the plaintiff for the value of certain gravel taken by the defendant partly from her lot in the city of Grand Rapids and partly from an adjoining alley between its center and the side adjoining the lot.

The case was referred to a referee, who found the defendant liable for the whole of the gravel. But, exception being taken to his report, the court rejected the amount found by him for the gravel taken within the lines of the alley; and gave judgment only for that taken from her lot outside of the alley.

Referring to the finding by the referee, the exception thereto, the rulings and judgment of the court for a full statement of the case, we proceed to the main question involved.

The referee found defendant had taken five hundred and thirty-one cubic yards of gravel from that part of the alley lying east of the center thereof, and adjoining plaintiff's lot. In the absence of any showing to the contrary, we must presume that her ownership of the soil extended to the center of the alley, subject only to the public right in the same as a highway (for such, it is to be inferred from the evidence, it was), including, probably, the right of the city authorities to sink water-pipes and gas-pipes, and to use it for like public purposes. She was therefore the owner of, and entitled to, the gravel to the center of the alley, with the right to take and remove the same to a depth which should not exceed the grade of the alley which might be adopted by the city authorities.

This right may, for the purposes of this case, be admitted (though we do not decide the point) to be subject to the right of the city authorities to use any portion of the soil or gravel for the purpose of filling up any part of this alley, from one street to the other, in bringing the alley to such grade as they should choose to adopt. But we do not think this right of the public authorities would extend so far as to allow them, as against the plaintiff, to remove the gravel entirely from the alley to fill up streets elsewhere in the city.

It is therefore unnecessary to determine whether the assent given by the common council to the owners along the west side of the alley to grade the alley at their own expense and under their own management, gave to such owners all the rights to the use of the soil in such alley that the city would have possessed, had the grading been

done by the public authorities, though we think it quite clear this assent did not give to the owners along the west-side of the alley the right to determine, as against the plaintiff, or any .other adjoining owner, the grade to which the alley was to be brought. And it is certain these owners, who had thus been allowed to grade at their own expense, and in their own way, could not, as the city authorities might have done, exercise the right of eminent domain, or any right of ownership, not already fully vested in the city; and we think it exceedingly questionable whether this permission given to such owners to grade, etc., gave them any right to do any thing in the way of grading, except with the assent of the respective owners who might be affected by the work.

The defendant, therefore, who was only a contractor of the owners to whom the permission had thus been given, had no right, as against the plaintiff, under the pretense of grading this alley, to take the gravel and carry it off to fill up a street elsewhere, under a contract which he had with the city; or, in other words, to take it away from the alley entirely *for the purpose of sale,* unless the plaintiff had assented to his using and disposing of it in that manner.

The only consent shown to have been given by the plaintiff, was a consent to the grading of the alley without charge upon her, he to get his whole pay from the owners on the other side of the alley.

Now, without some proof of usage or custom, to control or explain the meaning of this license, or evidence that, upon being called upon by him, she had refused to assign or allow him any convenient place to deposit such gravel, we see nothing in her mere consent or license to grade the alley on the terms mentioned, which could authorize him thus to carry it off beyond the alley and to sell it for his

own profit, leaving (as the finding shows he did) the alley itself ungraded. This was making a fraudulent use of the license or permission she had given to grade the alley, to which alone she had assented.

We think, therefore, the referee was right in allowing to the plaintiff the value of the gravel thus taken from the portion of the alley in question, and sold by the defendant, and that the circuit court erred in refusing to allow it.

The plaintiff is therefore entitled to the judgment of this court, upon the finding of the referee, for all the gravel taken, as well that within the portion of the alley in question, as that upon her lot outside of the alley; amounting, as found by the referee, to one hundred and ninety-four dollars and seventy cents, with interest from the date of the judgment in the circuit court, April 22d, A. D. 1871 (one year), being thirteen dollars and sixty-three cents, making in the whole, at this date, two hundred and eight dollars and thirty-three cents, with costs in both courts.

As to the objection made in the court below, that the plaintiff was not entitled to costs, we think she was clearly entitled to them under § *5597 Comp. L., subdivision 2,* in force at the time the suit was commenced; as the "right to do an injury to her lands," "came in question on the trial of the cause;" and the right would certainly be no less clear under the same section as amended in 1871.—*Sess. L., 1871, p. 192.*

As to the particular items and amounts to be allowed, that is a question that can only be raised upon taxation.

CAMPBELL and COOLEY, JJ., concurred.

GRAVES, J., did not sit in this case.