VILLAGE OF KALKASKA v SHELL OIL COMPANY
(AFTER REMAND)

Docket No. 81915. Argued December 7, 1988 (Calendar No. 2). Decided
September 11, 1989.

The Village and County of Kalkaska and MGM Petroleum, Ltd.,
brought an action in the Kalkaska Circuit Court against the
Shell Oil Company, seeking a determination of proprietary
interests in gas and oil lying beneath streets and alleys of the
village. Owners of lots abutting platted streets and alleys
within two drilling units within the village were joined as
defendants, and the State of Michigan also joined as a defen-
dant. The court, William A. Porter, J., granted summary judg-
ment for the defendants and dismissed the complaint, stating
that the Legislature did not intend that the recording of the
subject plats pursuant to 1859 PA 35, 1885 PA 111, and 1887
PA 309 would constitute a conveyance of the roadways to the
municipality in fee simple absolute, but, rather, that the con-
veyance was a base fee, subject to the condition subsequent
that they be used as roadways or the fee would terminate. The
Court of Appeals, BURNS, P.J., and MAHER and F. D. BROUIL-
LETTE, JJ., affirmed in an opinion per curiam (Docket No.
87230). The Supreme Court remanded the case to the Court of
Appeals for reconsideration in light of *Eyde Bros Development
Co v Eaton Co Drain Comm'r,* 427 Mich 271 (1986). On remand,
the Court, DANHOF, C.J., and MAHER and McDONALD, JJ.,
reaffirmed in an opinion per curiam, stating that while mineral
extraction may be appropriate to the extent necessary to place
improvements in or on the property, it is not appropriate
where the minerals are extracted solely for the purpose of
marketing them and collecting revenues (Docket No. 100338).
MGM appeals.

In an opinion by Justice LEVIN, joined by Justices BRICKLEY,
CAVANAGH, ARCHER, and GRIFFIN, the Supreme Court *held:*

The Village and the County of Kalkaska have no proprietary
interest in, and may not sell, oil and gas lying beneath the
surface of land dedicated for public use as streets and alleys.

The plat acts in question provided that a subdivision map or
plat recorded in compliance with the acts was to be deemed a

sufficient conveyance to vest the fee of the parcels designated for public use in the city or village in trust for the uses and purposes designated and no others. The village did not assert a claim to the oil, mineral, and gas rights as a necessary incident to the placement of public utilities or structures. While mineral extraction might be appropriate to the extent necessary to place improvements in or on such property, it is not appropriate where the extraction is solely for the purpose of marketing. The village and county have no proprietary interest in the oil and gas lying beneath its streets and alleys dedicated under the acts for public use.

Chief Justice RILEY, joined by Justice BOYLE, concurring, stated that the specific dedication language of the plats could not reasonably be interpreted to have transferred oil and gas beneath the platted streets, but evidences an intention to convey an easement necessary to effectuate the limited purpose for which the dedication was enacted.

Affirmed.

163 Mich App 534; 415 NW2d 267 (1987) affirmed.

*Thomas J. Jewett* and *Thomas L. Moore* for plaintiff MGM Petroleum, Ltd.

*William S. Gregory* for plaintiffs Village of Kalkaska and County of Kalkaska.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Russell E. Prins,* Assistant Attorneys General, for the State of Michigan.

*Marco, Litzenburger, Smith, Brown & Erhart, P.C.* (by *Wayne Richard Smith*), for defendant abutting landowners.

*Mika, Meyers, Beckett & Jones* (by *Mark A. Kehoe*) for defendant Shell Oil Company.

Amicus Curiae:

*Loomis, Ewert, Ederer, Parsley, Davis & Gotting* (by *James R. Neal, Rodger T. Ederer,* and *John O.*

*Juroszek)* for the Standing Committee on Oil and Gas Law of the State Bar of Michigan.

LEVIN, J. The question presented is whether the Village or County of Kalkaska obtained a proprietary interest in oil and gas lying beneath the surface of land that was designated, on plats recorded in 1876, 1888, and 1918, for public use as streets or alleys. We agree with the circuit judge and the Court of Appeals that a proprietary interest in oil and gas was not conveyed to the village or county when the plats were recorded, and that the village and county may not sell the oil and gas lying beneath the surface of the land.

I

Defendant Shell Oil Company explored for and apparently discovered oil or gas in two eighty-acre drilling units within plaintiff Village of Kalkaska. After Shell had developed the drilling units, plaintiff MGM Petroleum, Ltd., leased from Kalkaska an interest in oil and gas lying beneath streets and alleys of the village.[1] The Village and County of Kalkaska commenced this action against Shell to determine interests in land.[2] The owners of lots abutting platted streets and alleys within the drilling units were joined as defendants. The State of Michigan also joined as a defendant, claiming fee title to mineral rights under platted roadways adjacent to platted lots respecting which the state had reserved fee title to minerals.

There are, within the drilling units, three recorded plats, Sweet's Addition, recorded in 1876,

---

[1] The validity of this lease was challenged by several of the defendants for reasons not pertinent to this appeal.

[2] GCR 1963, 754 (now MCR 3.411); MCL 600.2932; MSA 27A.2932.

Sweet's Second Addition, recorded in 1888, and Phelp's Addition, recorded in 1918.[3]

The plat acts provided that a subdivision map or plat recorded in compliance with the acts "shall be deemed a sufficient conveyance to vest the fee of such parcels of land as may be therein designated for public uses in the city or village within the incorporate limits of which the land platted is included [or in the township where the parcel is not within an incorporated city or village] in trust to and for the uses and purposes therein designated, and for no other use or purpose whatever."[4]

The circuit judge granted summary judgment in favor of the defendants and dismissed plaintiffs' complaint,[5] stating that "the Legislature did not intend that the recordation of the subject plats would constitute a conveyance to the municipality of the roadways in fee simple absolute . . . ." He said that the "statutory conveyance referred to is the conveyance of a 'base fee,' "[6] i.e., the fee was

---

[3] There is no dedicatory language on the face of Sweet's Addition or Sweet's Second Addition. For the purposes of this appeal, the defendants assume, arguendo, that all the plats were properly made and recorded pursuant to the statutes.

[4] 1887 PA 309. 1859 PA 35 and 1885 PA 111, earlier plat acts, provided the same, except that the words "expressed, named, or intended" were used where the word "designated" appeared in the 1887 act, and the fee was vested "for public uses in the county in which the said town, city, village, or additions lie, in trust" etc., without regard to whether the city or village was incorporated. See MCL 560.253; MSA 26.430(253).

[5] The judgment declared that plaintiffs "have no right, title or interest in any coal, oil, gas or other mineral found to be on or under the platted streets which are the subject matter of this action," that Shell "has valid leasehold title to the oil, gas and mineral rights located beneath the platted streets within its producing unit," and that "the oil and gas leases between the Plaintiffs herein are void and of no force and effect."

[6] The judge cited *Kirchen v Remenga,* 291 Mich 94, 112; 288 NW 344 (1939), where this Court said:

The term "base fee," which the court in [*Patrick v Young Men's Christian Ass'n of Kalamazoo,* 120 Mich 185; 79 NW 208

subject to the "qualification or a condition subsequent" that the "street or alley be continued to be used" as such, and, if it were not, "the fee in the municipality would terminate."

The judge said that by the plat act language providing that the conveyance was in trust to and for the uses and purposes designated in the plat, the Legislature evidenced its "intent to limit the nature and extent of the interest of the trustee municipality to what was reasonably sufficient to exercise its responsibility." He continued that the Legislature "went on additionally to say that the fee was to be used for no other use or purposes than those designated, whatsoever." He concluded that the Legislature intended to limit the trustee municipality "to utilization of the property to the extent necessary to effect the purposes and uses designated and anything reasonably and necessarily incidental thereto."

The judge added that "to the extent, the plaintiffs can prove that the gas and oil and/or any other mineral deposits were of a reasonable and

---

(1899)] said was probably meant by the statute, was used in the sense of a fee which has a qualification annexed to it. 1 Bouvier's Law Dictionary (Rawle's 3d rev), p 329.

Other definitions of "base fee" are

An estate in real property which has the possibility of enduring forever but which may be determined and put to an end without the aid of a conveyance by some act or event circumscribing its continuance or extent. [Ballentine's Law Dictionary (3d ed), p 125.]

One that may last forever if the contingency does not happen, but debased because its duration depends upon collateral circumstances which qualify it; sometimes called a conditional, determinable, or qualified fee.

In old English law, an estate or fee which has a qualification subjoined thereto, and which must be determined whenever the qualification annexed to it is at an end. [Black's Law Dictionary (5th ed), p 137. Citations omitted.]

practical utility for the use or maintenance of the property as a street or alley, the taking of the same by the defendants may be actionable to such extent." The circuit judge reviewed at length the case law and concluded that summary judgment dismissing plaintiffs' complaint should be entered for the defendants.

The Court of Appeals, in affirming, adopted the opinion of the circuit judge.[7] This Court remanded the case to the Court of Appeals for reconsideration in light of *Eyde Bros Development Co v Eaton Co Drain Comm'r,* 427 Mich 271; 398 NW2d 297 (1986).[8] On remand, the Court of Appeals reaffirmed, stating that it did not believe its earlier decision was inconsistent with *Eyde Bros,* which held that "a public easement in a highway dedicated by user is not limited to surface travel, but includes those uses, such as the installation of sewers, contemplated to be in the public interest and for the public benefit."[9] The Court said, and we agree:

> The Village of Kalkaska did not assert a claim to the oil, mineral, and gas rights as a necessary incident to the placement of public utilities or structures thereon. Even had such a claim been made, it would not have merit under the facts of this case. While mineral extraction may be appropriate to the extent necessary to place improvements in or on the property (see *Cleveland v Detroit,* 324 Mich 527; 37 NW2d 625 [1949]), such is not appropriate where the minerals are extracted solely for the purpose of marketing them and collecting the revenues (see *Cuming v Prang,*

---

[7] *Village of Kalkaska v Shell Oil Co,* 157 Mich App 227; 403 NW2d 474 (1986).

[8] 428 Mich 895; 405 NW2d 879 (1987).

[9] The statement in *Eyde,* p 287, that "title in fee simple would be in the" county road commission was dicta as the case concerned a common-law and not a statutory dedication.

24 Mich 514 [1872]). [*Kalkaska v Shell Oil Co (On Remand),* 163 Mich App 534, 537; 415 NW2d 267 (1987).]

II

Kalkaska contends that a statutory dedication of land pursuant to the plat act for a specific purpose conveys, by reason of the language of the act,[10] an absolute fee absent an express exception or reservation in the recorded plat. Statutory dedication, it is said, differs from common-law dedication which creates only a public easement.[11] Kalkaska asserts that a base fee, although subject to termination, transfers all the incidents of ownership that attach to an absolute fee.

Kalkaska relies on *Des Moines v Hall,* 24 Iowa 234, 237 (1868), and *Belgum v Kimball,* 163 Neb 774, 782; 81 NW2d 205 (1957), which held that minerals under streets and alleys dedicated in a statutory plat belong to the municipality. The Iowa and Nebraska statutes provided that the recording of the plat was "equivalent to a deed in fee simple of " the portion of the land set apart on the plat for streets or other "public use."

Other courts have construed similar statutes as conveying "only the surface and so much of the subsurface as is necessary for street construction and municipal services," and that the city "acquired no interest in the oil, gas or other minerals underlying its streets and alleys as a result of the recording and acknowledgment of subdivision

---

[10] See n 4 and accompanying text.

[11] The effect of a dedication under the statute has been to vest the fee in the county, in trust for the municipality intended to be benefited, whereas, at common law, the act of dedication created only an easement in the public. [*Village of Grandville v Jenison,* 84 Mich 54, 65; 47 NW 600 (1890).]

plats . . . ." *Evanston v Robinson,* 702 P2d 1283,
1289-1290 (Wyo, 1985).[12]

Kalkaska's reliance on *Cuming v Prang,* 24
Mich 514 (1872), and *Bissell v Collins,* 28 Mich 277
(1873), is misplaced. In *Cuming,* gravel found in
the alley was distributed over the whole alley. As
stated in *Bissell, Cuming* "recognized the right of
the city to make use of the gravel found within the
limits of the alley in improving any part of it."[13]
But, as stated in *Cuming,* the city had no right to
take the gravel "for the purpose of sale, unless the
plaintiff had assented to" using or disposing of it
in that manner.[14] *Cuming* also recognized a right

---

[12] See also *Leadville v Bohn Mining Co,* 37 Colo 248, 251; 86 P 1038
(1906), where the statute provided, that " '[a]ll avenues, streets, alleys,
parks, and other places designated or described as for public use on
the map or plat of any city or town, or of any addition made to such
city or town, shall be deemed to be public property, and the fee
thereof be vested in such city or town.' " *Mallory v Taggart,* 24 Utah
2d 267, 269; 470 P2d 254 (1970), where the statute provided: "Such
maps and plats when made, acknowledged, filed and recorded with
the county recorder shall be a dedication of all such avenues, streets,
lanes, alleys, commons or other public places or blocks, and sufficient
to vest the fee of such parcels of land as are therein expressed, named
or intended for public uses for the inhabitants of such town and for
the public for the uses therein named, or intended."

The Wyoming statute, considered in *Evanston v Robinson, supra,* p
1289, provided that the recording of a plat "is equivalent to a deed in
fee simple [of] such portion of the premises platted as is on such plat
set apart for streets, or other public use."

[13] In *Bissell, supra,* p 279, the gravel was used on other portions of
the street, and the Court declared:

> We could not assent to the doctrine that a city, in improving
> a street, may not take the natural material found within its
> limits suitable for the purpose, and distribute it in making the
> improvement as the authorities deem best.

[14] In *Griswold v Bay City,* 35 Mich 452, 455 (1877), the Court was
satisfied that the soils disposed of by the city had no special value.
The Court's analysis is inconsistent with Kalkaska's claims:

> If in grading this street it became necessary to remove any
> soil, the city would have had an undoubted right to use the
> same in grading that or any other street in the city. In case it
> did not desire it for such purpose, *and* the owner of the

in the city "to sink water-pipes and gas-pipes, and to use it for like purposes." *Id.,* pp 523-524.

Kalkaska's reliance on *Central Land Co v Grand Rapids,* 302 Mich 105; 4 NW2d 485 (1942), is also misplaced. Land had been conveyed to the City of Grand Rapids by deed on condition that it be used for street and park purposes. This was an absolute conveyance on a condition subsequent that would take effect if the land were not used solely for the purposes for which conveyed and not a conveyance pursuant to a plat act. The Court ruled that oil production on the park lands was not a violation of the *condition subsequent* because it was not inconsistent with use for street and park purposes:

> Defendants have taken rather extraordinary care in so operating the oil wells on the park property that this activity does not materially impair the use of the land for the purposes for which it was conveyed to the city. [*Id.,* p 110.]

> Neither the park property as a whole nor any substantial portion thereof is being used in any way or for any purpose which in any substantial degree interferes with the uses for which the property was conveyed to the city. [*Id.,* p 113.]

In *Wayne Co v Miller,* 31 Mich 447, 449 (1875), the county attempted to recover lands dedicated as a street. In rejecting the county's claim, the Court said, "It is very clear that *no purpose existed* [in

property from in front of which it was taken did not, *then* the city would have a clear right to remove it, and might, in so doing, sell or dispose of it in any way it considered proper. [Emphasis added.]

the 1839 plat act][15] *to give a title in the nature of private ownership."* [16] (Emphasis added.) In *Bay Co v Bradley,* 39 Mich 163, 166 (1878), the Court held that the county could not maintain an ejectment action with respect to land dedicated pursuant to the 1839 plat act for public use and observed that the county *"acquires no beneficial ownership of the land";* "the law vests it with nominal title"; "[i]t cannot grant or otherwise dispose of the premises . . . ." (Emphasis added.) In *Backus v Detroit,* 49 Mich 110, 115; 13 NW 380 (1882), the Court said that the plat act[17]

> passed the fee in all streets marked upon it to the county in which the city is situated: Comp L § 1345; but this was only in trust for street purposes. We attach no special importance to the fact that the title passed instead of a mere easement. *The purpose of the statute is not to give the county the usual rights of a proprietor,* but to preclude questions which might arise respecting the public uses, other than those of mere passage, to which the land might be devoted.[18] [Emphasis added.]

[15] The text of 1839 PA 91 is the same as 1859 PA 35 and 1885 PA 111 except that the fee was vested "for public uses, in the county in which such town lies, in trust . . . ." See n 4 and accompanying text.

[16]  It is not very clear what sort of title the act of 1839 designed to vest in the county, whether a fee simple, or only a conditional fee, or possibly a perpetual easement. . . . Unquestionably the purpose was to vest in the county such a title as would enable the public authorities to devote the lands to all the public uses contemplated in making the plan, and to charge them with corresponding obligations when the title should vest. It is very clear that no purpose existed to give a title in the nature of a private ownership. [*Wayne Co v Miller, supra,* pp 448-449.]

[17] 1859 PA 35; 1871 CL 1345, see n 4.

[18] In *Detroit v Detroit City R Co,* 76 Mich 421, 425; 43 NW 447 (1889), the Court said that the cities "have *no proprietary interest* in city streets as their private property . . . ." Similarly see *In re Albers' Petition,* 113 Mich 640; 71 NW 1110 (1897). (Emphasis added.)

We conclude, on review of the statements and analyses of this Court over the years, that the Village and the County of Kalkaska have no proprietary interest in, and may not sell, oil and gas lying beneath streets and alleys dedicated for public use pursuant to the plat acts of 1887 and earlier years.

Affirmed.

BRICKLEY, CAVANAGH, ARCHER, and GRIFFIN, JJ., concurred with LEVIN, J.

RILEY, C.J. (*concurring*). I concur with the result reached by Justice LEVIN because I am persuaded that the dedication pursuant to the various plat acts involved herein cannot reasonably be interpreted to have transferred oil and gas beneath the platted streets.

I believe that the specific language of the plats evidences an intention to convey an easement necessary to effectuate the limited purpose for which the dedication was enacted.

Finally, I believe that our holding today is consistent with prior Michigan case law.

BOYLE, J., concurred with RILEY, C.J.