# STATE OF MICHIGAN

# COURT OF APPEALS

JUDITH ANGELOFF,

       Plaintiff,

v

CITY OF ROYAL OAK,

       Defendant-Appellant,

and

GRAND TRUNK WESTERN RAILROAD
COMPANY,

       Defendant-Appellee.

UNPUBLISHED
December 29, 2015

No. 322643
Oakland Circuit Court
LC No. 2013-133293-NI

---

JUDITH ANGELOFF,

       Plaintiff-Appellee,

v

CITY OF ROYAL OAK,

       Defendant-Appellant,

and

GRAND TRUNK WESTERN RAILROAD
COMPANY,

       Defendant.

No. 322853
Oakland Circuit Court
LC No. 2013-133293-NI

---

Before: RONAYNE KRAUSE, P.J., and MARKEY and M. J. KELLY, JJ.

PER CURIAM.

-1-

In Docket No. 322643, defendant, City of Royal Oak, appeals by leave granted the trial court's order granting the motion for sanctions by defendant, Grand Trunk Western Railroad Company (Grand Trunk). In Docket No. 322853, Royal Oak appeals by right the trial court's orders granting the motion for partial summary disposition under MCR 2.116(C)(10) by plaintiff, Judith Angeloff, and denying Royal Oak's motion for summary disposition under MCR 2.116(C)(7). For the reasons more fully explained below, we affirm in both dockets.

## I. BACKGROUND

Angeloff initially sued Royal Oak to recover damages for injuries she suffered when she fell from her bicycle while riding on a paved area alongside Thirteen Mile Road in Royal Oak. She alleged that she was riding on the sidewalk alongside the road and coming out from underneath a railroad viaduct when she rode over defects in the sidewalk, which caused her to lose control of her bicycle and fall. Angeloff alleged that Royal Oak was liable under MCL 691.1402a because the sidewalk was within its jurisdiction and it had a duty to maintain it in reasonable repair. She later amended her complaint to include a claim against Grand Trunk after discovery showed that it was Royal Oak's position that Grand Trunk had possession and control of the area where she fell.

Each party thereafter moved for summary disposition or partial summary disposition. The trial court granted Angeloff's motion for partial summary disposition under MCR 2.116(C)(10) with respect to Royal Oak's liability under the highway exception to government immunity, ruling that the submitted evidence established that the pavement on which Angeloff fell was a sidewalk under MCL 691.1401(f). The trial court rejected Royal Oak's claim that damages for bodily injury under the highway exception precluded economic damages for work loss or damages for emotional injuries or pain and suffering. The trial court also granted Grand Trunk's motion for summary disposition under MCR 2.116(C)(10) with respect to whether it had a duty to maintain the pavement at issue. In a separate ruling, the trial court granted Grand Trunk's motion for sanctions against Royal Oak, which was predicated on Grand Trunk's claim that Angeloff's amended complaint adding it as a defendant was the result of Royal Oak's false responses to Angeloff's discovery requests.

These appeals followed.

## II. DOCKET NO. 322853

In Docket No. 322853, Royal Oak challenges the trial court's decision to grant Angeloff's motion for partial summary disposition under MCR 2.116(C)(10). It argues that it is entitled to summary disposition because the area where Angeloff fell does not qualify as a "sidewalk" for purposes of the governmental tort governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, and, therefore, that exception to its immunity does not apply.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Hannay v Dep't of Transp*, 497 Mich 45, 58; 860 NW2d 67 (2014). We also review de novo the proper interpretation of a statute. *2000 Baum Family Trust v Babel*, 488 Mich 136, 143; 793 NW2d 633 (2010).

In order to state a claim against a governmental agency, the plaintiff must plead facts in avoidance of governmental immunity. *Hannay*, 497 Mich at 58. The GTLA provides six exceptions to governmental immunity. *Id.* at 59-60. At issue here is the highway exception stated under MCL 600.1402 and, in particular, MCL 691.1402a.

The Legislature amended the GTLA shortly before Angeloff's fall in May 2012. See 2012 PA 50. As amended, the act provides that "[a] municipal corporation in which a sidewalk is installed adjacent to a municipal, county, or state highway shall maintain the sidewalk in reasonable repair." MCL 691.1402a(1). The 2012 amendatory act also added a definition of "sidewalk," and amended the term "highway." See MCL 691.1401(f).

Our Supreme Court has held that a "sidewalk" is commonly understood to be "a path for pedestrians along the side of the road." *Hatch v Grand Haven Twp*, 461 Mich 457, 464; 606 NW2d 633 (2000). The Court also indicated that an objective analysis of the facts, and not the label attached by a municipality to a path, controls whether the exception to governmental immunity applies. *Id.* at 465 n 4. The Court added that "[a]n action may not be maintained under the highway expectation unless it is clearly within the scope and meaning of the statute." *Id.* at 464.

In reviewing a motion under MCR 2.116(C)(10), the court must consider the pleadings, admissions, and other evidence submitted by the parties in a light most favorable to the nonmoving party to determine if a genuine issue of material fact exists. *Rambin v Allstate Ins Co*, 495 Mich 316, 325; 852 NW2d 34 (2014). Evidence is considered only to the extent that its content or substance would be admissible as evidence. MCR 2.116(G)(6). "The moving party has the initial burden to support its claim for summary disposition by affidavits, depositions, admissions, or other documentary evidence." *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). If that burden is satisfied, the burden shifts to the nonmoving party to show a genuine issue of material fact. *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue on which reasonable minds could differ." *C D Barnes Assoc, Inc v Star Heaven, LLC*, 300 Mich App 389, 407; 834 NW2d 878 (2013).

A sidewalk is defined in MCL 691.1401(f) to be "a paved public sidewalk intended for pedestrian use situated outside of and adjacent to the improved portion of a highway designed for vehicular travel." There is no dispute that the area where Angeloff fell is paved. In addition, Royal Oak does not dispute that it is "adjacent to the improved portion of a highway designed for vehicular travel." Photos show that the area where Angeloff fell is on the north side of a paved section that, for a short distance underneath and beyond a bridge used by the railroad, consists of two adjacent rows of cement slabs. Royal Oak also does not dispute that the south row of cement slabs, which continues beyond the area of the bridge, qualifies as a sidewalk as defined in MCL 691.1401(f). However, it argues that the north row or cement slabs, which ends a short distance after the bridge at a patch of grass, does not satisfy the "public" or "intended for pedestrian use" elements of the statutory definition of a sidewalk.

As used in MCL 691.1401(f), the term "public," like the term "paved," modifies the word "sidewalk." It is also apparent that the Legislature used the term "sidewalk" as part of the statutory definition of a "sidewalk." When construing a statute, a court begins with the statutory

-3-

language to determine the Legislature's intent. *C D Barnes Assoc, Inc*, 300 Mich App at 408. The words and phrases used in a statute are read in context to determine their meaning. *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421-422; 662 NW2d 710 (2003). If statutory language is clear and unambiguous, it is applied as written. *C D Barnes Assoc, Inc*, 300 Mich App at 408. Because the Legislature used the term "sidewalk" as part of the statutory definition of a "sidewalk," it is appropriate to continue construing that term according to its commonly understood meaning, as a path for pedestrians along the side of a road. *Hatch*, 461 Mich at 464. And the term "public" is commonly understood to mean "accessible to or shared by all members of the community." *Merriam Webster's Collegiate Dictionary* (11th ed).

We disagree with Royal Oak's argument that Grand Trunk's ownership of the underlying fee precludes a determination that the sidewalk is a "public" sidewalk. Although Grand Trunk's surveyor indicated in his deposition that the area where Angeloff fell is Grand Trunk's property, he also stated that Grand Trunk's property was subject to Royal Oak's public rights. He testified that the north side was within the boundary lines of the Thirteen Mile Road right of way. Grand Trunk's warranty deed expressly provides that the property is subject to public's right of way. The 1925 subdivision plat depicting the disputed area specifies that, subject to a right of reversion, "streets and alleys shown on said plat are hereby dedicated to the use of the public." "The essence of a dedication is that the covered land will be for the use of the public at large." *2000 Baum Family Trust*, 488 Mich at 144. Although there are some distinctions between common-law and statutory dedications with respect to whether a dedication is accompanied by a conveyance of the title or creates a public easement, the public control acquired over the land under either dedication is only in trust to secure the public rights. *2000 Baum Family Trust*, 488 Mich at 154; see also *Kalkaska v Shell Oil Co*, 433 Mich 348, 354 n 11; 446 NW2d 91 (1989).

Because the undisputed evidence showed that the area where Angeloff fell, and not simply the paved row south of the fall, was within Royal Oak's right-of-way for public use, its claim that it was not a "public" sidewalk fails. Both rows of cement slabs were accessible to members of the community based on the photographic evidence.

Royal Oak's argument also lacks factual support. Royal Oak relies on the deposition testimony of its engineer, Matthew Callahan, in support of its contention that the northern row of cement slabs was paved only so that grass maintenance would not be necessary in that area. Royal Oak's reliance on that testimony is misplaced for two reasons. First, as the trial court observed, Callahan testified that he did not have personal knowledge of the reason why the section was paved, and only knew what he had been told by someone else. Royal Oak has not challenged the trial court's determination that this testimony was inadmissible hearsay. MRE 801(c). "It is axiomatic that where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court." *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999). Second, a party's intent is not the same as a party's motive for doing an act. "A motive is an inducement for doing some act; it gives birth to a purpose. The resolve to commit an act constitutes the intent." *People v Kuhn*, 232 Mich 310, 312; 205 NW 188 (1925). Royal Oak has shown, at most, evidence of its motive for the act of paving, but that is insufficient to demonstrate a genuine issue of material fact regarding whether the paved public walkway was intended for pedestrian use.

Lastly, we reject Royal Oak's argument that the paved row of cement slabs where Angeloff fell cannot meet the statutory definition of a "sidewalk" in MCL 691.1401(f) because it is akin to a "berm." The City relies on *Stevenson v Detroit*, 264 Mich App 37, 42; 689 NW2d 239 (2004), in which the plaintiff argued that a berm should be considered part of a "highway" as then defined in MCL 691.1401(e) because it is a natural extension of a sidewalk. The "berm" in that case was the strip of grass between a public road and a sidewalk. *Id.* at 38 n 1. This Court observed that the highway exception must be narrowly construed and that the "highway" definition expressly excludes alleys, trees, and utility poles. *Id.* at 42-43. It concluded that the "plain language of the statute simply does not support the conclusion that berms are included within the statutory definition of the term 'highway.' " *Id.* at 43. Because this case does not involve a strip of grass or any other natural land mass between a public road and a sidewalk, but rather a paved area, Royal Oak's reliance on *Stevenson* is misplaced. The fact that Royal Oak chose to construct two rows of cement slabs only in the area of the bridge does not transform the character of the shorter row running closer to the public road into a "berm."

Royal Oak failed to establish a genuine issue of material fact regarding its claim that the area in question did not constitute a 'sidewalk" as defined in MCL 691.1401(f). Accordingly, we affirm the trial court's decision granting Angeloff's motion for partial summary disposition under MCR 2.116(C)(10).

Royal Oak also challenges the trial court's denial of its motion for summary disposition under MCR 2.116(C)(7) in which it sought to preclude recovery of economic damages for work loss and noneconomic damages for emotional injuries or pain and suffering on the ground that such damages did not constitute damages for "bodily injury" as limited by MCL 691.1402(1). In *Hannay*, 497 Mich at 68, our Supreme Court addressed a similar provision under the motor vehicle exception, MCL 691.1405, and explained that " 'bodily injury' is a term of art used by the Legislature in the context of governmental immunity to refer to a category of injury for which damages that naturally flow are compensable, so long as those damages are properly pleaded." Accordingly, the Court held that " 'liable for bodily' " injury" means "legally responsible for damages flowing from a physical or corporeal injury to the body" and that "a plaintiff may bring a third-party tort action for economic damages, such as work-loss damages, and noncomomic damages, such as pain and suffering or emotional damages . . . ." *Id.* at 51. The Supreme Court's interpretation of the phrase "liable for bodily injury" in MCL 691.1405 applies equally to the requirement in the highway exception that that "[a] person who sustains bodily injury . . . may recover for damages suffered by him or her." MCL 691.1402(1). Accordingly, the trial court properly denied Royal Oak's motion for partial summary disposition with respect to this issue.

### III. DOCKET NO. 322643

In Docket No. 322643, Royal Oak challenges the trial court's order granting Grand Trunk's motion for sanctions. We review a trial court's decision to impose sanctions for clear error. *Schadewald v Brulé*, 225 Mich App 26, 41; 570 NW2d 788 (1997). "The trial court's decision is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed." *Id.* We review de novo the proper interpretation of a statute or court rule. *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012).

Royal Oak first argues that sanctions were improper because a codefendant may not be considered a prevailing party under MCL 600.2591. The record does not show that the trial court relied on MCL 600.2591 for its authority to sanction Royal Oak. We note that Grand Trunk moved for sanctions under MCR 2.114(E), but that Grand Trunk also argued that MCR 2.625(A)(2) and MCL 600.2591 supported sanctions. MCR 2.625(A)(2) provides that, "if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." The latter statute authorizes a court to award a "prevailing party" "costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney." MCL 600.2591(1). The statute defines a "prevailing party" as "a party who wins on the entire record." MCL 600.2591(3)(b).

In *Fansler v Richardson*, 266 Mich App 123, 128; 698 NW2d 916 (2005), this Court addressed whether a codefendant may be a prevailing party for purposes of costs under MCR 2.625(A)(1) and held that a party may not be considered a prevailing party unless the party's position improved as against an opposing party. Although the *Fansler* decision addressed liability for costs under MCR 2.625(A)(1), not sanctions under MCR 2.625(A)(2) and MCL 600.2591, its rationale is equally applicable to the "prevailing party" requirement in MCL 600.2591. As in *Fransler*, 266 Mich App at 129, there is no evidence in this case that Grand Trunk had a vested right of action against Royal Oak premised on Angeloff's claim. Therefore, we agree that Grand Trunk cannot satisfy the "prevailing party" requirement of MCL 600.2591 to permit an award of sanctions.

Nevertheless, the trial court specifically ordered sanctions under MCR 2.114. In contrast to MCL 600.2591, sanctions under MCR 2.114(E) are warranted by a party signing a document in violation of that rule:

> If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

MCR 2.114(C)(1) requires that "[e]very document of a party represented by an attorney shall be signed by at least one attorney of record." The effect of a signature of an attorney constitutes a certification that:

> (1) he or she has read the document;
>
> (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and
>
> (3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. [MCR 2.114(D).]

Although sanctions are mandatory under MCR 2.114(E) if a court finds that a document was signed in violation of MCR 2.114(D), *Guerrero v Smith*, 280 Mich App 647, 678; 761 NW2d 723 (2008), a trial court has discretion in fashioning an appropriate sanction, *FMB-First Nat'l Bank v Bailey*, 232 Mich App 711, 726-727; 591 NW2d 676 (1998). Considering the grounds raised for sanctions in Grand Trunk's motion and the totality of the record, we are not firmly convinced that the trial court was mistaken when it found that Royal Oak signed the documents at issue in violation of MCR 2.114. *Schadewald*, 225 Mich App at 41.

Grand Trunk sought sanctions in part on the basis of Royal Oak's August 2013 answers to Angeloff's first interrogatories and its supplemental answers, which were signed by Royal Oak's engineer, Callahan, and by its lawyer. Grand Trunk argued that Royal Oak's answers falsely asserted that the location of Angeloff's fall could not be identified and that Grand Trunk had a duty under a city ordinance to maintain the sidewalk where she fell. MCR 2.309(B)(3) requires that answers to interrogatories be signed by the person making them. MCR 2.302(G)(1) provides that "[i]n addition to any other signature required by these rules, every request for discovery and every response or objection to such a request made by a party represented by an attorney shall be signed by at least one attorney of record." A trial court may sanction a party's attorney or the represented party under MCR 2.114(E) for a false or misleading answer to an interrogatory. *Kirschner v Process Design Assoc, Inc*, 459 Mich 587, 597; 592 NW2d 707 (1999).

The answer to interrogatory number four represented that the exact location of Angeloff's fall could not be determined from the allegations in the complaint. Yet in her complaint Angeloff described her fall as having been caused by uneven concrete flags in the sidewalk just west of the railroad viaduct, which she encountered immediately after coming out from under the viaduct. She also gave notice of her claim to Royal Oak. In that notice, Angeloff specifically described the hazardous area; she also attached a map identifying the general location and included a picture with marks indicating the specific defects that caused her fall. This information was sufficient for Royal Oak to determine the location of Angeloff's fall and determine after a reasonable inquiry whether it occurred within the area subject to Royal Oak's possession and control. See MCR 2.114(D)(2).

In addition, Callahan's supplemental answer to the third interrogatory regarding the identity of any other party responsible for maintaining the sidewalk in the disputed area specified that "[p]er city code 650, the adjacent property owner." Callahan supplemented his answer to the fourth interrogatory to identify Canadian National Railroad[1] as a nonparty who caused or contributed to the occurrence. Although Callahan did not represent in the supplemental answers that Royal Oak was delegating responsibilities under the GLTA to property owners contrary to *Figueroa v City of Garden City*, 169 Mich App 619; 426 NW2d 727 (1988), his statement suggested that Royal Oak had factual support for, and a good faith belief in, the proposition that Grand Trunk might be responsible for the hazard at issue. There is record evidence, however,

---

[1] There was some dispute as to whether Canadian National Railroad was a proper reference or tradename for Grand Trunk.

tending to suggest that Royal Oak knew or should have known that it made the improvement that Angeloff claimed was hazardous and had sole responsibility for maintaining it.  On this record, we cannot state that the trial court clearly erred when it found that Royal Oak made these answers in violation of MCR 2.114(D).  *Schadewald*, 225 Mich App at 41.

There were no errors warranting relief in either docket.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Jane E. Markey
/s/ Michael J. Kelly